# GERBER *v.* PROBEY.

CONDITIONAL SALES; ASSIGNMENTS; REPLEVIN; PAROL TESTIMONY; IMPEACHMENT OF WITNESSES; REPUTATION.

1. A provision in a contract of sale whereby the property in the goods

Note.—On the right of witness to testify to character from personal knowledge, see note in 22 L.R.A. (N.S.) 650.

sold is retained by the seller until the goods are paid for is a valid provision. (Following *Wall* v. *DeMitkiewicz,* 9 App. D. C. 109.)

2. The seller of goods under a conditional sales contract whereby the property of the goods remains in the seller until paid for may transfer his rights under the contract to another.

3. Where a purchaser of goods under a conditional sales contract whereby the property in the goods remains in the seller until paid for is required by the terms of the contract to give promissory notes from time to time to the seller for the accommodation of the seller, but which under the terms of the contract are not to be received in payment of the goods, and the purchaser gives such notes, which by their terms are made not negotiable, the failure of the seller to return such notes to the purchaser is no defense to an action of replevin for the goods by an assignee of the seller against the purchaser. (Citing *Wall* v. *DeMitkiewicz,* supra.)

4. In an action of replevin for automobiles sold under a written conditional sales contract and not paid for, it is no defense that under a verbal agreement with the president of the selling corporation the buyer was given the right to hold the goods for repairs made on them, where the contract provided that the buyer should make no claim for anything done or performed in or about the property, and that the contract could not be waived, modified, or changed by any verbal understanding or agreement, or in any way except by writing between the parties or indorsed thereon.

5. An impeaching witness must know the general reputation of the witness whom he seeks to impeach, in the community in which he lives. His reputation among a limited class of people residing elsewhere is not sufficient.

No. 2862.   Submitted January 6, 1916.   Decided February 7, 1916.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action of replevin.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action of replevin begun by Gerber & Company against T. Oliver Probey to recover the possession of seventeen automobiles valued at $17,000. An undertaking having been filed by the plaintiff, the marshal executed the writ by seizing

the 'described property. The cars were sold pending the litigation, and it was agreed that, if defendant recovered, his recovery should be the reasonable market value of the cars at the time they were taken.

Plaintiffs' evidence tended to show that defendant, Probey, had been selling autos as agent for the Michigan Buggy Company. A contract between him and the Michigan Motor Company, dated August 28, 1912, was read in evidence. By the terms of this contract the company was to ship to Probey 125 cars f. o. b. Kalamazoo, Michigan; it was expressly stipulated that the title to the property shall not pass to Probey, but shall remain in the Michigan Motor Company until the purchase price be paid in cash; each automobile shall be paid for at 20 per cent less than the catalogue price of each model; this contract shall be terminated by limitation August 1, 1913, and supersedes all previous agreements between the parties. A supplemental contract made the same day, to more clearly specify the rights of the contracting parties, was also read.

Clause 3 of this declares that this is a sales contract, and not a purchase contract; that Probey is not agreeing to purchase any cars to be shipped under this contract, but is to distribute them and sell them at wholesale and retail in the territory and time herewith allotted.

Clause 4 reads: Probey has to-day delivered to the Michigan Motor Car Company, pursuant to this allotment, orders and approximate monthly shipping instructions for different models herein allotted, said shipments to be made in the month specified, party of the second part agreeing to receive or sell direct to others, display, demonstrate, store in first-class order, and maintain as new automobiles such as are shipped to him, pay freights and insure in full in the name of the Michigan Motor Car Company, and for its use and benefit, to pay the expenses of his sales, salary and expenses of its salesmen and demonstrators.

Clause 6: Automobiles shipped by party of the first part to party of the second part under this sales contract, it is agreed and understood, shall be the sole property of the party of the

first part, party of the second part hereby recognizing full right, title, and interest of party of the first part thereto, and only assuming the sales obligations and expense obligations as herein contracted thereon, and it is agreed and understood that party of the second part is to remit in cash to the first party from day to day and from time to time as each automobile is sold and delivered its full invoice value, together with all parts and extras at the net contract price herein agreed upon, and as may be shown by memorandum invoice mailed at the original time of shipment.

Clause 7: "In view of the unusually liberal features of this contract the second party does hereby and shall at the time of placing orders for shipments of automobiles give to party of the first part its promissory notes for the amount of said automobiles, net, said notes due in four months from the first of the month in which shipment is called for. It being understood that said notes are purely accommodation notes given as a deposit on said orders in view of the liberal terms of this sales contract and the amount of investment therein. And it is understood that these notes are not given in payment of any automobile or any part of this agreement, but are simply given for and by the purposes intended herein and specified, and that T. O. Probey is not and will not under any circumstances be expected to pay any part of those notes, the agreement being that the invoice value of each automobile will be remitted when sold and delivered, in cash, by the party of the second part, and that any accommodation deposit not given to apply in part or in whole will be returned by the party of the first part to T. O. Probey then and there."

Clause 8: Probey agrees that in case any automobiles have not been sold when said accommodation note matures he will agree to send to the company a renewal thereof for four months. The other party agrees to return the original notes, this procedure to continue until the said automobile is sold and disposed of, except as hereinafter provided.

Clause 10: It is agreed that the party of the second part shall keep an adequate stock of automobiles on hand as hereto-

fore provided, to make quick deliveries upon orders and sales, and shall have a sufficient number of salesmen to thoroughly work the aforesaid territory, and shall in all things use its best efforts to promote the sale of the Michigan Motor Car during the period covered by this sales contract, and will furnish the party of the first part statements of sales and stock on hand whenever called for, and make its remittances in cash from day to day and from time to time to party of the first part of each and every automobile and part thereof that is sold and delivered.

Clause 12: It is further understood that the party of the second part shall make no deductions from the invoice price for repairs or other expenses until statement of the same shall be submitted to party of the first part and by it approved.

Clause 26 of the first of these contracts provided that it is stipulated and agreed between the dealer and manufacturer that the title to the property mentioned herein or in any subsequent order shall not pass to the dealer, but shall remain in the Michigan Motor Car Company until the purchase price of the same and all notes and acceptances given for the same shall be paid in cash.

Clause 32 of the same contract: "It is further stipulated and agreed that no claim shall be made against the manufacturer by the dealer for freight paid, storage service, or anything else connected with, done, or performed in or about said property. After acceptance of this order the manufacturer agrees to ship all goods ordered that it may be able to supply, but it is not to be held liable for damages on orders not filled. It is further understood and agreed that this paper, writing and printing, constitutes the entire agreement and understanding between the parties hereto, and it is expressly stipulated and agreed that it may not be varied, modified, or changed by any verbal understanding or agreement, or in any way except by writing between the parties hereto, or indorsed hereon, and no agent or salesman has any right or authority to change or alter this agreement in any particular except by the written authority of the manufacturer."

Proof was offered showing that autos were shipped under these contracts, and on June 24, 1913, Probey had on hand, unsold, twenty-seven autos, seventeen of which are included in this suit; that about June 25, 1913, the Michigan Buggy Company sold to the Pennsylvania Sales Corporation all of the autos in the hands of Probey at that time, and was paid for the same; that Probey was notified and consented thereto; the Michigan Buggy Company gave credit to Probey's account for the value of said autos. The Pennsylvania Sales Corporation sold the autos in Probey's hands on August 1, 1913, to the plaintiffs, who paid for the same. The Gerber Company wrote a letter to Probey, stating that it had purchased the 1912 models, and will permit him to keep those cars on the consigned terms, and to sell them if possible, or else reship at plaintiffs' order. Referring to the consigned cars, as soon as a definite report was received from Probey as to numbers, motor numbers and model numbers, would immediately render consigned invoices, and concludes as follows: "In the meantime, these cars are our property, placed and remaining with you for sale for our account, the proceeds of the sale to be held in trust for us, and to be accounted to us. You are not to sell these cars for less than our invoice price, in no event."

Later Probey was notified to ship a certain car to a designated party; that Probey shipped the car as requested. Copies of twenty-two invoices covering all of the cars in suit were made out and sent Probey between July 2d and 5th, 1913; these contained the following terms: To be sold for us and remittances made to us in cash at times of sale. A letter from Probey to E. F. Gerber, dated July 17, 1913, in reply to the letter from Gerber in regard to settlement for all cars sold, stated: "I will make a settlement for all cars delivered, and also those that we have deposits on, the 24th."

Witness Gerber related a conversation with Probey about August 2, 1913, in which reference was made to Probey's promise to settle by the 24th of July, which he had failed to do; he said he was not ready to make payment, and wanted to defer the matter until he had talked with his attorney; that while the

cars belonged. to the Pennsylvania Sales Corporation he was willing to turn them over on the advice of his attorney; that he did not think he would have to pay the notes given the Michigan Buggy Company. Later, in the city of Washington, plaintiff saw Probey at his office; that Probey said he was not at all worried about the notes given to the Michigan Buggy Company; that they were of no force and effect, and said he thought that about $150,000 of said notes were outstanding; that Probey never at any one time had more than thirty-five cars in his possession, the prices of which would not exceed $50,000; that he had been giving his notes to the Michigan Buggy Company for about two years; said they were not legal notes. One of these notes was offered in evidence, which reads as follows:

$960.08                    Washington, D. C., March 17th, 1913.

Four months after date I promise to pay Michigan Buggy Company, Kalamazoo, Michigan, Nine hundred and sixty 08/100 Dollars.

(signed) T. Oliver Probey.

Probey said this form of note had been prepared by his brother-in-law, and called attention to the omission of the words "to order."

Further evidence was offered, showing that Probey moved cars from his storehouse, and hid them in various places, where plaintiffs had great difficulty in locating and seizing them.

Defendant Probey testified that he was in the auto business in Washington; that the contract of August 28, 1912, was that under which the cars in this suit were shipped to him; that he bought 125 cars under this contract, and that he was to give a note for each car, to be paid as the car was delivered; that he had out in notes about $180,000; that the cars would run from $1,225 to $1,410, which depended on model and finish, and these prices were all he was to pay for the said cars. He read a letter from the secretary of the Michigan Buggy Company, dated August 28, 1912, acknowledging receipt of 125 notes, and concluding thus: "Which we have credited to your

auto deposit account, to be handled according to our contract with you." Defendant went to Kalamazoo in June, 1913, being worried about the way notes were being taken care of. There were then out about 125 notes and about 15 for the year previous that he had not gotten into possession after he made settlement; that he objected to the manner his notes were treated, and demanded return of the 125 notes under the 1912 contract, and also those under the 1911 contract; also demanded of the president of the Michigan Buggy Company money expended by him in repairing Michigan cars for the past two years, and return of freight money; also about $1,100 paid the Washington Star and about $950 paid the Washington Post for advertising. The president of the company said that he had accepted these notes as his payment for cars, and was willing to return all the notes there had been no cars shipped for, and the company would retain all notes on hand for cars that had not been settled for; that if any time Probey could not get enough money from the cars to pay the notes Probey could return the cars, and he would return the notes. Probey testified that his claim for rebuilding the cars was "in the neighborhood of about $11,-000, if witness remembers rightly;" that the president, Palmer, agreed to give Probey a better contract for 1914 cars, and there would be no more note dealing; that he was to sell the 1913 cars to whomsoever he saw fit, and after 1914 cars came on the Michigan Buggy Company would take back the 1913 cars, and return the notes taken for payment. Probey denied agreeing to the sale to the Pennsylvania Sales Corporation, and also all declarations relating to his talk of settlement or attempts to convert his property into cash testified to by plaintiffs' witnesses; that when the cars were demanded he said they were welcome to them, provided he got his notes back; he said he knew nothing of the sale to the Pennsylvania Sales Corporation, and never consented thereto; that he got no notice of crediting him with the cars sold to the Pennsylvania Sales Corporation; that all the cars replevied were held by him under the 1912 contract and under his agreement with President Palmer. In connection with this evidence, after stating that he intended to pay the first

twenty-six notes that would be presented, plaintiff offered the record in the equity suit by the E. F. Gerber Company v. Probey and the holders of said notes, particularly the answer of said holders, stating that they denied any claim against Probey on the notes, and regarded him as not liable thereon. This answer was excluded, and plaintiff excepted. Witness then proceeded. The proceeds of cars sold prior to June 25, 1913, were given up to the Michigan Buggy Company when there were $15,000 in notes out on the models of the year before. Though the company got the cars his notes were not returned; that he renewed these notes without getting back the old ones; that after the 1912 cars had been taken by Gerber he had about $180,000 of notes outstanding, he supposes in the hands of the Michigan Buggy Company. The Michigan Buggy Company nor its trustees, or receivers, or anyone for it, had ever demanded payment of said notes; that during 1913 such notes as he sent the Michigan Buggy Company were without dates, and that all 1912 notes were renewed and were sent to the Michigan Buggy Company without regard to the number of cars he had on hand; that the Michigan Buggy Company had a whole batch of notes that were given when the contract was signed, and that he holds himself liable on the first twenty-six notes that might be presented; that more than twenty-six notes had been presented, but he has not paid any of them; that no demand was made on him for payment until the cars had been taken from him, and he did not pay any of them; he has not been paid anything for the $11,000 for rebuilding the cars.

A witness residing in Martinsburg, West Virginia, testified that he knew Gerber, and knew other people who knew him; has known Gerber for five or six years, and has frequently heard his reputation for truth and veracity discussed by people who knew him; that he knows what his reputation is among those people who know him, whom he has talked with; that he could not recollect with whom he had talked about Mr. Gerber's reputation or who had told him anything about it, but named George Getz, who mentioned Mr. Gerber's name several years ago to

witness; witness cannot name anyone else whom he has heard speak of Mr. Gerber.

Counsel for plaintiff objected to this evidence.

The court then questioned the witness to know if he had heard Gerber's reputation spoken of enough to know what it is in that respect among manufacturers. Witness then testified that Gerber's reputation for truth and veracity is unfavorable. Gerber's residence is Detroit, Michigan.

C. F. Diggs testified for defendant that he was a member of the Washington bar and brother-in-law and counsel for Probey; that he had met Gerber in Kalamazoo, and met a number of people who knew Gerber there, and his reputation for truth and veracity is bad; that he advised Probey to dispose of the cars in such a way that Gerber could not get them; but never advised Probey to dispose of his property to avoid payment of his just debts, or to "salt away" any of his property to avoid the payment of any debts justly due.

The plaintiffs requested the following instructions to be given to the jury:

1. The jury are instructed that if they believe the Michigan Buggy Company sold the automobiles in suit and the right of possession thereto to the Pennsylvania Sales Corporation at any time before August 6, 1913, and further believe that the Pennsylvania Sales Corporation sold said cars and the right of possession thereto to the plaintiffs herein at any time before said August 6, 1913, and that the plaintiffs still held such title and right of possession on August 6, 1913, then the plaintiffs are entitled to recover.

2. The jury are instructed that if the Pennsylvania Sales Corporation actually paid for the cars in suit to the Michigan Buggy Company or the trustee in bankruptcy of the Michigan Buggy Company, and that the Pennsylvania Sales Corporation sold said automobiles and the right of possession thereto to the plaintiffs before August 6, 1913, then the plaintiffs are entitled to recover if they still held said title and right to possession at the time of the entry of this suit.

3. The jury is instructed that if they believe that Probey

Vol. XLIV.—26.

made a contract with the Michigan Buggy Company in the name of the Michigan Motor Car Company, and should also find that the Michigan Buggy Company was trading under said name of Michigan Motor Car Company, and in said contract reserved title to itself in the seventeen automobiles now in suit, and later validly transferred said title to the Pennsylvania Sales Corporation, who later transferred title to the plaintiffs herein, then the title to said cars passed to the plaintiffs, and the defendant, Probey, thereafter holding said cars without any new agreement, would hold same for the plaintiffs.

4. The jury are instructed that if they should find that the promissory notes given by Probey and payable to the Michigan Buggy Company were not payable to the order of the payee or to bearer, then they were not negotiable, and could give no higher right to any transferee thereof than was in the original payee; and the jury are further instructed that if said notes were accommodation notes, as provided under the purported written contract dated August 28, 1912 (plaintiffs' exhibit No. 1), then there is no obligation upon said defendant, Probey, to pay said notes.

5. The jury are instructed that such automobiles as were in the possession of T. Oliver Probey, shipped to him under and in accordance with the contract of August 28, 1912 (plaintiffs' exhibit No. 1), were not subject to any lien in behalf of said Probey for any balance which said Probey claimed to be due him, and if the jury find by a preponderance of the evidence that title and the right to possession to the automobiles in suit had been derived by the plaintiffs, directly or indirectly, from the Michigan Buggy Company, and was in said plaintiffs at the time of the commencement of this suit, on August 6, 1912, then the plaintiffs would be entitled to the possession of said automobiles on said August 6, 1913, irrespective of any amount due to Probey by his original consignor.

6. The jury are instructed that if they should find that there was a contract of August 28, 1912, between the defendant, Probey, and the Michigan Buggy Company, and should also find that there was a contract of said date between said Probey

and the Michigan Motor Car Company as a corporation, then the property and right to the possession of the automobiles in suit shipped under the purported contract of August 28, 1912, in evidence, would not pass to the defendant, Probey, and he would hold such possession as obtained under and by virtue of such purported contract for the real owner of said automobiles.

7. The jury are instructed that the title to all cars shipped to Probey under the contract dated August 28, 1912 (plaintiffs' exhibit No. 1), was reserved in said contract to the real owner thereof, and did not pass to Probey, and such title could be later transferred by said real owner.

Each instruction was refused and the plaintiff excepted.

The court then charged the jury as follows:

"An amended declaration has been filed by consent of counsel in this case, so that it now reads for the seventeen automobiles that were actually found and replevied, and the question you have to determine is whether they were rightly replevied. That is the main question in the case. When the Gerbers came down here and took possession of these cars under the replevin writ, had they a right to the possession of those cars? They say they had, because they had bought them with the consent of Probey, and he had agreed to turn them over to them whenever they asked for them, as well as to pay for those that had been sold; that by that agreement they were substituted for the original party to the contract, whichever it was, whether it was the Motor Car Company or the Buggy Company; that by agreement between Gerber, representing the Sales Company, and Probey, that new arrangement had been made, and that the matter as between Probey and the Kalamazoo Company has all been settled and digested, and these cars, which were leftovers, were to be held thereafter by Probey for the Sales Company, and to be turned over whenever they wanted them, or sent anywhere they directed them to be sent; and that since then the plaintiffs, the Gerbers, had succeeded to the rights of the Sales Company, and therefore had a right to come down and ask for the cars,

and when the delivery of them was refused, had the right to
retake them by process of law.

"I shall not go over the evidence with you. You will have
it in mind, and it has been discussed by the counsel. That is
their province. But if you find that that new arrangement was
made, in accordance with the testimony of Mr. Gerber, which
he claims is substantiated by various documentary evidence,
as well, if you find that new arrangement to have been entered
into, then the plaintiffs are right about it, they did have a right
to come down here and call for these cars, and Probey does not
claim that if that arrangement is found to be true, he had any
right to detain them. So you ought to go over all this evidence
very carefully, and make up your minds as to what the truth
about the question is. Of course, Mr. Probey says he never
entered into any such arrangement as that at all, that whatever
arrangements he had, he had with the Kalamazoo Company,
and he has told you what it was.

"All this evidence must be looked at and carefully scrutinized
with reference to that question. It has been argued to you on
both sides with reference to the human probabilities, how a
man would be likely to act on one side, and on the other, what
Probey would be likely to do in such circumstances, and what
Gerber, representing the Sales Company, would be likely to do
under such circumstances. That is all addressed to you. I
have nothing to do with that. It is a question of fact for you.

"If you do not find, by a fair balance of testimony, that this
new arrangement was entered into, then the plaintiffs cannot
recover in this case. If you do find that it was entered into, then
the plaintiffs are entitled to the cars which were taken possession
of under the replevin suits, and are entitled to damages for their
unlawful detention between the time when demand was made
for them and the time when possession was secured.

"While it is not necessary to say it, in order to state that the
law is as I understand it on that question clearly, I will say,
because it may save you some embarrassment, or save you think-
ing of some things that you do not need to think of, that I hold
as a matter of law that the plaintiffs cannot recover unless this

new arrangement was entered into under the facts of this case, because if the plaintiffs merely succeeded to the rights of the Kalamazoo Company, the manufacturers, the selling company, then they would have only the rights which that company would have had to come down here and make demand, and, inasmuch as that company had this great amount of notes outstanding, although not negotiable notes, all this evidence of indebtedness in their hands, which, under the arrangement, was to be surrendered if the cars were returned, they could not come down and take the cars away without returning that paper and making a reasonable adjustment with Mr. Probey, and neither could the Sales Company, nor the Gerbers, do it by merely succeeding to the rights of the selling company.

"If the plaintiffs have failed to make out a right to have these machines at the time that demand was made, then the defendant is entitled to a verdict, and inasmuch as it is agreed that the cars cannot be returned, having been disposed of to others, the verdict will have to be, not that the cars should be returned to the defendant, but that he should recover damages in place of the cars, and those damages would be the reasonable market value of the cars at the time they were taken away from him, and that must not exceed the amount named in the contract under which he held the cars, which, in the aggregate, is $23,821 for the seventeen cars, $23,821 as the counsel have computed the prices of these cars, with the discounts. So that your verdict, if for the defendant, cannot exceed that amount as the value of the cars, and may be whatever sum less you find to be the actual market value at that time."

Plaintiffs objected, and took an exception (1) to that portion of the charge which based the rights of the plaintiffs to recover on the entirely new arrangement, namely, the arrangement made with the consent of the defendant; (2) to that portion of the charge holding, in effect, that the plaintiffs would not have the right to take the cars without first making an adjustment of the amount, notes, etc., that the Michigan Buggy Company might have had to adjust before retaking the cars.

With these instructions the case was submitted to the jury, who returned a verdict for the defendant for $6,800.

Motion for new trial having been overruled, judgment was entered on this verdict, and the plaintiffs have appealed.

*Mr. Charles A. Douglas, Mr. Thomas Ruffin, Mr. Hugh H. Obear, Mr. James S. Easby-Smith,* and *Mr. W. B. Guy* for the appellants.

*Mr. Wilton J. Lambert* and *Mr. Charles F. Diggs* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The court erred in refusing to give to the jury the special instructions one, two, four, five, six, and seven asked by plaintiffs, and also in the charge given in lieu thereof, that was excepted to.

By the terms of the contract offered in evidence the title to the automobiles delivered to defendant was expressly retained by the Michigan Buggy Company; and this was a valid provision. *Harkness* v. *Russell,* 118 U. S. 663, 30 L. ed. 285, 7 Sup. Ct. Rep. 51; *Wall* v. *DeMitkiewicz,* 9 App. D. C. 109–122.

This title passed to the Pennsylvania Sales Corporation by the transfer of the Michigan Buggy Company, and afterwards by that corporation to the plaintiffs. The notes which the defendant gave for the accommodation of the Michigan Buggy Company, it was expressly contracted, were not in payment for the cars delivered.

The giving of these notes did not affect the terms of the contract, retaining title.

As no title to the automobiles could pass except upon compliance with the terms of the contract, the failure to return these notes cannot change its effect. *Wall* v. *DeMitkiewicz,* 9 App. D. C. 109–125.

The defendant's claim to hold the cars under the alleged verbal agreement with Palmer, the President of the Michigan Buggy Company, cannot be supported.

The contract expressly provided that defendant "should make no claim for freight paid, storage services, or anything else done or performed in or about said property," and it was further expressly provided that this contract may not be waived, modified, or changed by any verbal understanding or agreement, or in any way except by writing between the parties thereto, or indorsed thereon.

It was also error not to give the third special instruction asked by plaintiffs regarding the use of the corporate name of the Michigan Motor Company by the Michigan Buggy Company, for the uncontradicted evidence showed that the Michigan Motor Company, with which the contract was made, was but a trade name used by the Michigan Buggy Company in carrying on the automobile part of its business. It was the owner of the automobiles, and adopted and used the name, "Michigan Motor Company," for convenience.

The admission of the evidence of Max Robinson impeaching the plaintiff Gerber was error. The witness was a resident of Martinsburg, West Virginia, and Gerber of Detroit. The witness was not familiar with Gerber's reputation in the community where he lived, and made no pretense that he was. He had simply heard Gerber's reputation discussed by some persons living elsewhere, and chiefly manufacturers, and upon this based his statement that his reputation for truth and veracity was bad.

An impeaching witness should know the general reputation of a witness in the community in which he lives. His reputation among a limited class of people residing elsewhere was not competent. *Williams* v. *United States,* 168 U. S. 382–397, 42 L. ed. 509–515, 18 Sup. Ct. Rep. 92; *Brown* v. *United States,* 164 U. S. 221–224, 41 L. ed. 410, 411, 17 Sup. Ct. Rep. 33; *Teese* v. *Huntingdon,* 23 How. 2–13, 16 L. ed. 479–483; *Douglass* v. *Tousey,* 2 Wend. 352–354, 20 Am. Dec. 616; 1 Greenl. Ev. 16th ed. sec. 461 d. (3).

The impeaching testimony of the witness Diggs was not ob-jected to.

These are the only assignments of error which it is considered necessary to notice.

The judgment is reversed, with costs, and the cause remanded for a new trial in conformity with this opinion.    *Reversed.*