THE WATERBURY TRUST COMPANY *vs.* HERMAN J. WEISMAN, TRUSTEE IN BANKRUPTCY.

Third Judicial District, Bridgeport, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Notes given for deferred portions of the purchase price of automobiles sold by a motor car company on conditional bills of sale, were transferred by indorsement of the vendor before their maturity to the plaintiff trust company, which thereafter continued to own and hold the notes; but no formal transfer of the conditional bills of sale was made. Somewhat later, and while these notes remained unpaid, the motor car company was adjudicated a bankrupt and the defendant was appointed its trustee. As such he collected from the makers of the outstanding notes considerable sums which he refused to turn over to the plaintiff indorsee. In an action to recover these sums it was *held:*—

1. That the defendant trustee had unjustly enriched the bankrupt estate by these collections, and was legally bound to return the moneys so collected to the plaintiff, to whom they of right belonged; and that this remedy, being the most direct under the circumstances, was one the law favored.

2. That the plaintiff, by the purchase of these notes without releasing the indorser from liability, had succeeded to all the rights which the motor car company had in and to the conditional bills of sale,

which were practically nothing more than a species of collateral security to which the original vendor could no longer resort, the plaintiff having paid for the automobiles sold by its purchase of the notes.

An assignment or transfer of a debt carries with it the collateral held for its payment.

A special defense which merely alleges the defendant's usual method of selling automobiles, is not, strictly speaking, equivalent to an allegation that the sales in question were in fact made in that way; though that may be assumed, if, as in the present case, both parties so agree.

Submitted on briefs October 29th—decided December 22d, 1919.

ACTION to recover moneys collected by the defendant trustee upon notes payable to the bankrupt corporation which it had sold, indorsed and delivered to the plaintiff prior to the bankruptcy, brought to the Superior Court in New Haven County and tried to the court, *Keeler, J.,* upon a demurrer to the answer; the court sustained the demurrer and rendered judgment for the plaintiff for $5,000, from which the defendant appealed. *No error.*

*John F. McDonough,* for the appellant (defendant).

*Nathaniel R. Bronson, Lawrence L. Lewis* and *Charles E. Hart, Jr.,* for the appellee (plaintiff).

WHEELER, J.   The complaint alleges that the Burt Motor Car Company was engaged in selling automobiles in Waterbury to purchasers at an agreed price, part of which was paid in cash and the rest by note or notes; and that as a part of the transaction each purchaser executed a conditional bill of sale, by the terms of which the title to the automobiles remained in the Company until payment of the purchase price, the last maturing note evidencing the final portion of the unpaid purchase price.

The Company sold to the plaintiff a number of these notes, aggregating $22,000, and thereafter went into bankruptcy, and the defendant was appointed and qualified as its trustee. The trustee immediately made demand upon the makers of these notes for the payment of the debt remaining unpaid for the purchase of these automobiles, and collected from the purchasers and makers $5,000, which he refused to pay over to the plaintiff.

The defendant in his answer admits his collection of these amounts, and his refusal to pay them over. In a special defense he alleges that the usual method of the Burt Company of transacting its business of selling automobiles, was to accept part of the purchase price in cash, and to secure the balance by a conditional bill of sale containing the usual provisions for payment by instalments, and for the retention of title in the Burt Company until the balance was paid; and that at the same time, and as a further evidence of the debt and as additional security, the purchasers executed notes to the Burt Company in conformity with the instalment provisions of the conditional bill of sale. And he further alleges that although the plaintiff had knowledge of the method of this Company of doing business, it accepted by indorsement said notes without attempting to secure or securing from the Company an assignment of the conditional bills of sale or of the title secured thereby; that the plaintiff did not rely upon the bills of sale or the automobiles as security for the payment of the notes, and did not intend to hold the Company liable for the notes but one Holmes, who had secured the plaintiff from any loss by reason of its acceptance of the notes; that the title to the automobiles was in the Burt Company and is now in the defendant, and that all moneys so paid by purchasers to the defendant under such bills of sale are the property of the defendant.

To this defense the plaintiff demurred because: (1) since the Burt Company transferred the notes evidencing the indebtedness for the purchase price and secured by the conditional bills of sale, it cannot collect this debt and hold it as its own upon the theory that it has title to the property secured by the bills of sale; (2) since the Burt Company received upon the discounting of the notes the purchase price, it cannot, nor can its trustee, collect under the bills of sale the purchase price a second time; (3) since the plaintiff was not obliged to acquire by assignment the bills of sale at the time it discounted the notes, its failure so to do does not give the trustee the right to collect the purchase price; and if, as alleged, the trustee has done this, he must repay to the plaintiff these moneys; and (4) since the plaintiff is the holder and owner of the notes and entitled to hold the makers therefor, the fact that the plaintiff did not intend to hold the Burt Company under the bills of sale but one Holmes, who had secured the plaintiff from loss by reason of its discount of the notes, would not justify it in collecting the purchase price from the makers of the notes.

The special defense states the method of the Burt Company in selling automobiles. It does not detail the terms of sale in the sales involved in this action. Strictly speaking, the failure to do this in the special defense must be taken, upon the demurrer to it, as an admission of the terms of sale as set out in the complaint. The defendant assumes that the statement of the method of sale is a statement of what in fact occurred in the sales under consideration, and as the plaintiff acquiesces in this, we shall make the same assumption. The defendant also assumes that there are substantial differences between this statement and that of the complaint. On the contrary, we think them practically alike. Both allege a sale and payment therefor,

part in cash and the balance in notes, and the giving
of conditional bills of sale by which the title to the auto-
mobiles sold remained in the Burt Company until the
payment of the last maturing note given for such pur-
chase price.   Both allege a transfer by indorsement of
these notes to the plaintiff.   The special defense says,
in addition, that both conditional bills of sale and notes
were given as security for the payment of the balance
of the purchase price.   These additional allegations
do not change the legal relations.

The situation is thus a common one,—the seller re-
ceives notes in part payment of the purchase price, and
retains title in the subject of the sale until the last note
is paid.   The seller sells the notes by indorsing them to
the plaintiff, who knows that conditional bills of sale
were taken when the notes were given, but does not
require an assignment of them.   The indorsement of
the notes was not "without recourse," so that the Burt
Company by its indorsement was liable to the plaintiff
for these notes.   The plaintiff as purchaser of the notes
had its remedy upon maturity of, or default upon, the
notes, against the makers of the notes and against the
indorser, the Burt Company.   The defendant, as
trustee of the Burt Company, succeeded to its rights
and obligations, and one of these obligations was a
liability upon this indorsement.   When the notes
matured, or were about to mature, the trustee of the
Burt Company notified the makers of the notes to
make payment to him, and thus collected upward of
$5,000, which he refuses to pay over to the plaintiff.

The position of the defendant is novel.   Liable as an
indorser of these notes, he has secured payment from
the makers to himself.   The notes were given to com-
plete payment of the purchase price of the automobiles,
and having received such payment from the plaintiff
bank when those notes were indorsed over to it by the

Burt Company, the trustee of the Company secures from the makers of the notes the payment of the debt they owe upon the purchase price. The trustee and his principal have thus been twice paid; and unless the plaintiff can maintain this action, it has lost the benefit of the indorser upon the notes and is limited in remedy to an action against the makers. They, having no defense to the plaintiff's action, must again pay the notes. If the legal situation led to this result it must be pronounced unconscionable.

Appreciation of this, no doubt, led the defendant's counsel to suggest that the plaintiff should seek the remedy provided by law, by presenting its claim against the bankrupt estate, and in case it was not paid in full, by proceeding against Holmes, who had secured to it the payment of these notes. The claim against the bankrupt estate could not be allowed unless the estate held moneys which belonged to the plaintiff; and the way in which the trustee obtained such moneys must be found to be improper. Under such circumstances the most direct remedy is that which the law most favors.

The defendant's admission that the plaintiff has a claim against the bankrupt estate, puts an end to his contention that because the plaintiff had the right to sue the makers, and had failed to procure assignments of the conditional bills of sale, and the payment of the note had been guaranteed by a third party, the defendant had the right to appropriate moneys which by right belonged to the plaintiff. The trial court well said: "Defendant has unjustly enriched his estate by this appropriation, and ought not to retain the money."

If we determine the legal relation of the plaintiff to the conditional bills of sale, we shall find that it succeeded to all the rights which the Burt Company had in and over these bills of sale. The transfer of the notes

by indorsement to the plaintiff left the Burt Company
liable upon its indorsement, but left the legal title to the
bills of sale in the Burt Company. Three theories of
the law have developed from such a situation. One,
that the transfer of the notes is an election to treat the
obligation as a debt, and to vest in the purchaser the
title to the property sold him on conditional sale. Two,
that the transfer of the notes transfers automatically
the security of the conditional bill of sale and vests in
the holder of the notes the title to the property. Three,
that the transfer leaves the legal title in the vendor.

If the transfer of the notes had been absolute and
without recourse, and nothing further appeared, it
might well be held to be an election to rely on the debt,
but in any case the intent of the vendor is the factor
which determines whether there has been an election
between the two remedies; and this is a fact to be found
upon consideration of all the circumstances. *Truax* v.
*Parvis*, 7 Houst. (Del.) 330, 32 Atl. 227; *Meriden Trust
& Safe Deposit Co.* v. *Miller*, 88 Conn. 157, 163, 90
Atl. 228; 35 Cyc. 674, and cases cited. In this case the
transfer was by indorsement merely, leaving the Burt
Company still liable to the plaintiff on the notes as an
indorser. So that the situation, so far as an election is
concerned, is not essentially different from the transfer
of the notes as collateral to a loan. *Winton Motor
Carriage Co.* v. *Broadway Automobile Co.*, 65 Wash.
650, 118 Pac. 817, was the case of a transfer of notes as
collateral to a loan. In an elaborate opinion the court
holds, as matter of law, that the transfer was an elec-
tion to treat the note as an absolute debt, which vested
title to the property held under conditional sale in the
purchaser. We can understand the logic of a holding
that an absolute transfer must be held to indicate an
intent to make choice of the remedy to pursue the debt.
But the transfer of the notes by hypothecation intends

a return of the security to the pledgor, and from that fact alone it cannot logically be held that a choice of the remedy of looking to the debt was made.  The pledgor may pay the debt, and if he does, he should be in as good a position as before he hypothecated the notes.  The title to the notes should again be in him, and the title to the property which was vested in him until the notes were paid, should continue in him. *Ensley Lumber Co.* v. *Lewis*, 121 Ala. 94, 98, 25 So. 729; *McDonald Automobile Co.* v. *Bicknell*, 129 Tenn. 493, 167 S. W. 108; *Winton Motor Carriage Co.* v. *Broadway Automobile Co.*, 37 L. R. A. (N. S.) 71 note, and cases cited.  The theory that the transfer of the notes by indorsement carries with it the remedy of the conditional bill of sale vested in the seller, and by the transfer vested in the holder of the notes, leads, we think, to a sounder result than either of the other two theories of the authorities.

Our law is solicitous that all just debts shall be paid, and this rule promotes that end.  If the title is left in the seller under the conditional bill of sale, no purpose will be met.  He has transferred the evidence of the debt given for the purchase price.  He has no further interest in collecting the purchase price.  If it is carried on to the transferee of the notes, no burden is placed on the makers of the notes which they did not place on themselves.  All that is done is to continue, in another, the remedy which they gave the payee of the notes and the seller to them of the personal property.  This rule, as it seems to us, works for justice.  It is supported by respectable authority, whether by the more numerous authority we cannot say, but by the better reason and by the better result.  A vendor who sells a chattel, reserving the title until the purchase price is paid, retains the general property therein, not as the absolute owner, "but as collateral security, not differing mate-

rially from security by way of mortgage or other lien ";
and a transfer of the debt carries with it, as an incident,
his interest in the chattel, "in the same manner as the
assignment of a mortgage debt would carry with it the
mortgage." *Esty & Green* v. *Graham*, 46 N. H. 169,
170. In *Ross-Meehan Brake Shoe Foundry Co.* v.
*Pascagoula Ice Co.*, 72 Miss. 608, 615, 18 So. 364,
Chief Justice Cooper said: "But the reservation of the
title is but as security for the purchase price, and if the
property is recovered by the seller, he must deal with
it as security, and with reference to the equitable rights
of the purchaser. . . . Being but a security for the
payment of money, the benefit thereof follows the debt
when assigned, as an incident thereof."

Cases are frequently cited to this point which involve
purchase-money notes wherein the title was retained in
the seller until the purchase price was paid. This agree-
ment thus becomes a part of the note and of necessity
goes with the note, hence the cases are not exactly in
point. *Townsend* v. *Southern Product Co.*, 127 Ga. 342,
343, 56 S. E. 436; *Spoon* v. *Frambach*, 83 Minn. 301-
304, 86 N. W. 106; *W. W. Kimball Co.* v. *Mellon*, 80
Wis. 131, 48 N. W. 1100. .

The analogy between notes secured by conditional
bills of sale and notes secured by chattel mortgages, or
notes secured by mortgages, is marked. And the rule
that the mortgage is an incident or accessory of the
debt is universal. "A mortgage of either real or per-
sonal estate is but an accessory or incident of the debt,
or the security which is given as the evidence of the
debt. The assignment of the security passes the inter-
est in the mortgage." *Langdon* v. *Buel*, 9 Wend.
(N. Y.) 80, 84. In *Carpenter* v. *Longan*, 83 U. S.
(16 Wall.) 271, 274, the United States Supreme Court
says: "The note and mortgage are inseparable; the
former as essential, the latter as an incident. An assign-

ment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." And in the late case of *National Live Stock Bank* v. *First National Bank*, 203 U. S. 296, 306, 27 Sup. Ct. 79, the same court says: "The indorsement of the note and its delivery before maturity to the defendant by the payee of the note transferred its ownership to the defendant bank. This transfer also transferred, by operation of law, the ownership of the mortgage which was collateral to the note."

There is no error.

In this opinion the other judges concurred.