DISTRICT OF COLUMBIA v. HAMILTON NAT. BANK OF WASHINGTON.

No. 946.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 18, 1950.

Decided Oct. 17, 1950.

1. Cunningham v. Dade, D.C.Mun.App., 52 A.2d 894.

2. Barnes v. Conner, D.C.Mun.App., 44 A. 2d 925.

Chester H. Gray, Principal Assistant Corporation Counsel, and Hubert B. Pair, Assistant Corporation Counsel, with whom Vernon E. West, Corporation Counsel, Washington, D. C., was on the brief, for appellant.

Jo V. Morgan, Jr., Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

An automobile in which plaintiff, Hamilton National Bank, claimed a secured interest was found abandoned on a public street and was subsequently sold for $180 at a Metropolitan Police auction of abandoned property. This suit was commenced by the Bank to reach the proceeds of the sale. The trial court upheld the Bank's claim and the District of Columbia now appeals.

The automobile in question had been sold under a conditional sale agreement between Roper Motor Company as seller and one Rodriguez as buyer, which recited that title was to remain "in the seller or assigns" until the purchase price had been fully paid. Under the agreement, the purchaser was given the option of paying a "cash price" of $495 or a "time price" of $597.60. He elected the time payment method. He made a down payment of $165 and gave his note for the $432.60 balance, payable in monthly installments of $36.05 beginning February 11, 1946. Both the conditional sale agreement and the note for the unpaid balance of the purchase price were immediately transferred to General Credit, Inc., a finance company. The note was endorsed by Roper to the order of General Credit, and a printed assignment on the back of the conditional sale agreement was similarly executed. A "without recourse," blank endorsement was placed on the note by General Credit and it was delivered to the Hamilton Bank along with the conditional sale agreement, the Bank crediting $420.22 to the account of General Credit. The conditional vendee defaulted on all subsequent payments due and apparently abandoned the automobile.

The automobile was subsequently found on a public street without identification tags and was given into custody of the police property clerk on April 13, 1946. A routine search by the police to identify the owner of the automobile failed to disclose any record of title or lien in the District of Columbia.[1] Nor was the vehicle listed as stolen. On October 16, 1946, no claimants having appeared, the automobile was dis-

---

1. The record shows that the purchaser Rodriguez was a resident of Maryland and that application for title had been made there in his name subject to a lien

posed of at public auction for a total price of $180. The sale had been advertised in three local newspapers on October 13, 14 and 15, 1946. Sometime thereafter plaintiff Bank made claim upon the District and this suit followed, plaintiff recovering judgment. The District of Columbia urges four reasons for reversal, all of which merit separate discussion.

1. *The contention that the Bank lacked title necessary to maintain the action.*

The conditional sale agreement contained a specific reservation of title "in the seller or *assigns*" pending full payment of the purchase price. [Italics added.] And while in this jurisdiction the retained title is nothing more than a security interest[2] invocable only upon default by the buyer,[3] it is well-settled that the happening of such default clothes the seller with immediate right of repossession, and also the right to subject the property to the satisfaction of the unpaid obligation.[4] Had the seller, Roper, continued to hold the conditional sale and note his right to claim the proceeds of the sale could not be questioned. Such rights are fully assignable[5] and in the case at bar it is not disputed that Roper's execution of the assignment provision, together with his endorsement of the note covering the unpaid purchase price, accomplished a complete transfer of all his rights to General Credit on January 11, 1946. General Credit then succeeded to the position of the seller and was enabled to act as an effective conduit of the secured interest to the Hamilton Bank.

The trial court found that the note for the unpaid balance of the purchase price, and the conditional sale agreement, were "transferred and assigned ultimately to the plaintiff in this case," and ruled therefore "that there was good title * * * in the plaintiff Bank." We think the evidence amply established an intention of the parties to consummate an outright unit-purchase of the note and conditional sale by the Hamilton Bank. The following factors are significant in this regard:

(1) The two instruments were attached together and delivered to the Bank in that form. Hence it could be fairly argued that the endorsement of the note covered both instruments. (2) The note when transferred to the Bank carried a "without recourse" endorsement[6] by General Credit. (3) While the note contains no reference to the conditional sale agreement, the latter instrument expressly states that it is "evidenced by a note" and recites terms identical to those of the note in evidence. And there was testimony that the Bank held no other note signed by Rodriguez. (4) The printed assignment provision on the back of the conditional sale agreement expressly spells out the power of General Credit "to assign the same." (5) The volume and character of the dealings between General Credit and the Bank as disclosed by the Bank records in evidence support an inference that this transaction was one in which at least an oral or implied assignment of the security interest occurred.[7]

The District contends that a valid assign-

---

recorded as standing in favor of General Credit, Inc. as of January 21, 1946. The trial court ruled that the recordation of title in Maryland could have no bearing on the case.

2. Zweig v. Schwartz, D.C.Mun.App., 31 A. 2d 857.

3. Ballinger v. West Publishing Co., 44 App.D.C. 49.

4. Ballinger v. West Publishing Co., supra note 3; McFadden Securities Co. v. Stoneleigh Garage, 60 App.D.C. 400, 55 F.2d 1025; Owens Motor Co. v. Williford, 62 App.D.C. 319, 67 F.2d 691.

5. Gerber v. Probey, 44 App.D.C. 392.

6. The words "without recourse" "necessarily indicate a repudiation of further

liability." Williston on Contracts, Rev. Ed., § 420, n. 2, p. 1208. The assignor is relieved of all risk and there is no longer a reason to impute to him an intent to retain the security interest. Compare McDonald Automobile Co. v. Bicknell, 129 Tenn. 493, 167 S.W. 108, Ann.Cas.1916A, 265.

7. To deny such an inference would betray downright ignorance of commercial banking practice since it would amount to the conclusion that a bank would take a $432 note at a discount of but $12 from a "without recourse" endorser without requiring collateral security for the maker's promise to pay.

ment of the seller's rights under the conditional sale agreement cannot be raised from the circumstances of the transaction. The argument is made that without written execution the transfer was ineffectual to pass the security interest. D.C.Code Section 28—2503, which is cited in support, provides: "All nonnegotiable written agreements for the payment of money, including nonnegotiable bills of exchange and promissory notes, or for the delivery of personal property, all open accounts, debts, and demands of a liquidated character, except claims against the United States or the salaries of public officers, may be assigned in writing, so as to vest in the assignee a right to sue for the same in his own name."

We do not regard the quoted Code provision as having the effect which the District would ascribe to it. The obvious purpose of the section was "to vest in the assignee a right to sue * * * in his own name" whereas that procedural right had not been previously available to him. After this Code provision was enacted the assignee under a written assignment was allowed to maintain action in his own name, but this does not lead to the conclusion that an assignee under an oral or implied assignment was left without a remedy. As the real party in interest, he was still able to sue in the name of his assignor. Indeed under modern procedural rules, it has been made *mandatory* that, "Every action shall be prosecuted in the name of the real party in interest * * *."[8] In effect then the same purpose sought to be accomplished in the Code provision relied upon by the District is accomplished by rule of court without any requirement as to formalities of execution. In this regard Williston has said that, "In a jurisdiction where by statute the real party in interest is always allowed to sue in his own name, the legal effect of a previous statutory requirement of a written transfer in order to give the assignee a right enforceable at law in his own name seems done away with."[9]

We are of the opinion therefore that the absence of an express written assignment did not, without more, prevent an actual assignment of the conditional sale agreement to the Hamilton Bank. Whether there was an assignment of the instrument depended, as in the case of any contractual arrangement, on the intention of the parties to be ascertained from all the circumstances of the transaction.[10] And there was, as we have noted, ample evidence that the parties intended to work an assignment.

Even in the absence of an actual assignment of the agreement, the fact of the negotiation of the note, which in the hands of General Credit was secured by the conditional sale agreement would, we think, compel a determination that the security interest passed automatically to the Bank as an incident of the obligation. This conclusion finds support in many well-reasoned cases.[11]

As was said in Waterbury Trust Co. v. Weisman, 94 Conn. 210, 217, 108 A. 550, 553, "If the title is left in the seller under the conditional bill of sale, no purpose will be met. He has transferred the evidence of the debt given for the purchase price. He has no further interest in collecting the purchase price. If it is carried on to the transferee of the notes no burden is placed

8. Rule 17, Civil Rules of the Municipal Court; Rule 17, F.R.C.P., Title 28 U.S. C.A.

9. Williston on Contracts, Rev. Ed., § 430, p. 1240, and cases cited.

10. Williston on Contracts, Rev. Ed., § 424, 430; 6 C.J.S., Assignments, §§ 41, 45, 46; cf. Diatz v. Washington Technical School, Inc., D.C.Mun.App., 73 A.2d 227.

11. Edwards v. Bay State Gas Co., C.C. D.Del., 184 F. 979; Gay v. Hudson River Electric Power Co., C.C.N.D.N.Y., 180 F. 222; United States v. Fleming, D.C. N.D.Iowa, 69 F.Supp. 252; Shemwell v. Garrett, 159 Ga. 222, 125 S.E. 497; Western Electric Co. v. Norway Pacific Const. & Drydock Co., 124 Wash. 49, 213 P. 686; Waterbury Trust Co. v. Weisman, 94 Conn. 210, 108 A. 550; Cutting v. Whittemore, 72 N.H. 107, 54 A. 1098; Ross-Meehan Brake-Shoe Foundry Co. v. Pascagoula Ice Co., 72 Miss. 608, 18 So. 364; W. W. Kimball Co. v. Mellon, 80 Wis. 133, 48 N.W. 1100; Esty & Green v. Graham, 46 N.H. 169. See also Williston on Contracts, Rev. Ed., § 432, p. 1251, § 447A; Williston on Sales, Rev. Ed., § 332, p. 290.

on the maker of the note which he did not place on himself. All that is done is to continue in another the remedy which he gave the payee of the note and the seller to him of the personal property." There are some cases which appear to hold to the contrary,[12] but none of these involve a "without recourse" endorsement as here presented; nor do they state the majority rule.

2. *The contention that the claim was barred by the time limitation of D.C.Code, Section 4—160.*

The procedure governing disposition of lost or abandoned automobiles is set out in Section 4—160 as follows: "All property, except perishable property and animals, that shall remain in the custody of the property clerk for the period of six months, with the exception of motor vehicles which shall be held for a period of three months, without any lawful claimant thereto after having been three times advertised in some daily newspaper of general circulation published in the District of Columbia, shall be sold at public auction, and the proceeds of such sale having been retained by the said property clerk for a period of three months without a lawful claimant, shall then be paid into the policemen's fund * * *."

The District now claims that the automobile here involved was possessed, sold, and the proceeds disposed of, in accordance with the quoted statutory provision and that the failure of the Bank to make its claim within the indicated six months precluded it from making a later claim. In effect the contention is that the Code provision imposes a six months statute of limitations on such claims beginning when the automobile is turned over to the police property clerk. The trial court held, and we think properly, that this Code section is procedural and not destructive of the substantive rights of plaintiff Bank.

A twofold purpose is discernible in this quoted Code provision: (1) to provide for the Police Department a legal method of disposing of unclaimed property which has come into its custody, and (2) to restore such property to lawful claimants. It is true that the words of the statute suggest a duty upon property owners to come forward to claim lost or abandoned property. But we think that before the District can assert a bar against the claim presented, it must first have established full compliance with the statute on its own part. This we do not think it has done.

■ The statute requires an advertisement of an intended auction sale of such lost or abandoned property. We think that in imposing such a notice requirement, Congress intended that the advertisement contain a reasonably complete identification of the particular chattels to be sold. At the minimum the description should be such as to convey to a person reading the advertisement sufficient information to enable him to recognize a chattel as his own, before commencing to count a limitation period against him.

■ The only advertisement proved by the District was one stating that "27 motor vehicles" were to be sold. As appellee points out in its brief, "There was no mention of the make, model, year, engine or motor number of the automobile." Consequently we are unable to say that the specific 1935 Buick automobile here involved was ever advertised in accordance with the statute before being sold. Hence the District cannot now be heard to say that the claim was lost for failure of the Bank to respond to a non-existent notice.

3. *The contention that the claim was barred by failure of the Bank to plead and prove compliance with D.C.Code, Section 12—208.*

■ It is urged that since the Hamilton Bank failed to show timely written notice of its claim, the District acquired a good defense to the action. Reliance is placed on Code Section 12—208 which in part provides: "No action shall be maintained against the District of Columbia for unliquidated damages to person or property unless the claimant within six months after the injury or damage was sustained, he,

12. See e.g. McDonald Automobile Co. v. Bicknell, supra note 6; Winton Motor Carriage Co. v. Broadway Auto Co., 65 Wash. 650, 118 P. 817.

his agent, or attorney gave notice in writing to the commissioners of the District of Columbia of the approximate time, place, cause, and circumstances of such injury or damage * * *."

The District contends that, "The notice of claim required by this section is a jurisdictional prerequisite and must be alleged and proved as a condition precedent to the maintenance of an action against the District of Columbia." The statement is too broad. Plainly, the notice requirement governs only where the District is sought to be held on a claim for unliquidated damages, and is inapplicable to liquidated claims.

As originally drawn, the bill of particulars stating the claim of the Bank contained three separate counts. The first was for money had and received, the second was in tort for conversion, and the third count recited the facts in detail and contained allegations of negligence. Later, after unsuccessfully moving for summary judgment, plaintiff Bank sought and was granted leave to amend by striking all of the second count sounding in tort and those portions of the third count alleging negligence. With the case in this posture the judge before whom it had come on plaintiff's motion for summary judgment ruled that the amended third count stated a liquidated claim, thereby rendering Code provision 12—208 inapplicable. Although the trial judge did not expressly rule on the question, his finding for the plaintiff necessarily required a conclusion that the claim before him was other than unliquidated.

In District of Columbia v. World Fire & Marine Ins. Co., D.C.Mun.App., 68 A.2d 222, 225, this court in ruling that a tort claim was unliquidated within the meaning of the statute requiring notice stated the following rule: "Liquidated claims generally arise ex contractu rather than ex delicto and if not already rendered certain by a judgment or agreement are capable of ascertainment by computation." Here, as the case stood for trial on the amended pleadings, the tort count had been eliminated and there remained solely the quasi-contractual claim for money had and received. The basic theory of the action upon which plaintiff Bank sought to rely was assumpsit [13] which, while originally an action ex delicto, has long been regarded "strictly an action ex contractu." [14]

The District concedes that the claim of plaintiff Bank was for an undisputed amount and that in a proper case the owner of converted property may waive the tort and maintain an action in the nature of assumpsit. But the argument is made that the claim, having arisen out of negligence and conversion, sounded essentially in tort and that waiver of the tort was not proper nor had it occurred in this case.

We find no merit in the argument that the action was required to be in tort. An owner in the position of the plaintiff Bank whose chattel has been sold by a converter has two alternative remedies. He may sue in tort for the value of the property, or he may elect to adopt the sale and proceed against the converter in assumpsit for the benefits received.[15] This rule has long been recognized here,[16] and widely in other jurisdictions.[17] Moreover, we hold that the tort ground was effectively waived by the amendment before trial by which the allegations of conversion and negligence were struck from the pleadings.

We must rule therefore that this was not a claim involving disputed tort liability with damages held in a state of uncertainty.[18] Rather it was simply a suit for a specific amount of money representing the proceeds from the sale of an automobile accounted for and identified as such on the public records of the District of Columbia.

4. *The contention that the claim was*

---

13. Cf. Farrell v. Ward, D.C.Mun.App., 53 A.2d 46.

14. Miller v. Ambrose, 35 App.D.C. 75, 81.

15. Restatement, Restitution, Ch. 7, p. 525; § 128 (1937).

16. Cf. Stiles v. Selinger, 2 Mackey 429, 13 D.C. 429.

17. See Anno. 97 A.L.R. 250, 274.

18. Compare District of Columbia v. World Fire & Marine Ins. Co., D.C.Mun.App., 68 A.2d 222.

*barred because the transaction was in viola-*
*tion of the Loan Shark Law.*

Another contention of the District is that the plaintiff Bank should not have had judgment because it was basing its rights on a usurious contract. It is argued that the arrangement whereby the purchaser, Rodriguez, obligated himself to pay a total of $597.60 over an extended period for an automobile available to him at a cash price of $495 was a device to exact an unlawful interest payment. The trial court ruled that "the sale at a *Time Price* to the original purchaser, under a conditional sale agreement providing for monthly install-ments and including charges for insurance, financing and other related services for the privilege of buying on time rather than by cash, is not violative of the usury statute." That ruling is supported by eminent author-ity,[19] and we approve it as a correct gen-eral statement of the law.

We are asked to rule that the transac-tion masked a loan from General Credit to Rodriguez so as to bring it within the so-called Loan Shark Law, D.C.Code, Sec-tion 26—601.[20] That Act makes it unlaw-ful to engage in the business of loaning money at an interest rate greater than six per cent without procuring a license. The record shows that the difference of $102.60 between the "Cash Price" and "Time Price" was the amount charged for "Finance and Insurance." However, there was no evi-dence whatever as to what portion, if any, of that sum, was charged for "Finance."

The District argues that since there was no evidence that any insurance had in fact been furnished, the trial court should have found that the full $102.60 "was neces-sarily General Credit's charge for the use of the money it advanced to Roper for the benefit of Rodriguez, i.e., interest at a rate far in excess of six per cent per annum."

However, the well-established rule is that one who alleges usury or any contractual illegality has the burden of proving it.[21] Clearly, therefore, it was in-cumbent on the District to adduce evidence establishing an excessive finance payment, and the fact that the plaintiff Bank did not prove the amount of insurance premium did not relieve the District of its burden of proof.

Finally it should be stated that even if it could be held that the original transaction cloaked a loan agreement, the defense here asserted by the District would be ineffectual because such defense is only available against "the holder of an instru-ment given to secure payment of the loan, if the latter knew of its illegality." Hart-man v. Lubar, 77 U.S.App.D.C. 95, 96, 133 F.2d 44, 45. In this case there was no proof that the plaintiff Bank had knowl-edge of any usurious taint to the original transaction, if such taint there was.

With reference to other arguments ad-vanced on the appeal we think we need ven-ture no discussion except to say that the record discloses no error.

Affirmed.

19. Cullum v. General Motors Acceptance Corp., 5 Cir., 68 F.2d 310; General Mo-tors Acceptance Corp. v. Mid-West Chevrolet Co., 10 Cir., 66 F.2d 1; In re Bibbey, D.C.D.Minn., 9 F.2d 944; Gen-eral Motors Acceptance Corp. v. Wein-rich, 218 Mo.App. 68, 262 S.W. 425; Standard Motors Finance Co. v. Mitchell Auto Co., 173 Ark. 875, 293 S.W. 1026; Smith v. Kaufman, 145 Ark. 548, 224 S.

W. 978; Commercial Credit Co. v. Tar-water, 215 Ala. 123, 110 So. 39.

20. Construed in Hartman v. Lubar, 77 U. S.App.D.C. 95, 133 F.2d 44.

21. Spain v. Hamilton's Adm'r, 1 Wall. 604, 17 L.Ed. 619; General Motors Accept-ance Corp. v. Mid-West Chevrolet Co., supra note 19; Cullum v. General Mo-tors Acceptance Corp., supra note 19.