## SHEMWELL *v.* GARRETT.

1. Where the owner of land and personalty sold the same, received from the purchasers a part of the purchase-money in cash, took a series of notes for deferred payments of the purchase-price, gave his bond for title, in which he was to make title to the purchasers upon the payment by them of said notes and certain other indebtedness assumed by them, and in which he reserved title to the personalty until the purchasers had paid certain of their said notes, and afterwards transferred one of said notes to a third person by an indorsement without re-

course, such transfer vested, pro tanto, title to the personalty in such transferee as security for the payment of this note, and created in his favor a lien upon such property for such purpose.

2. Where the vendor later transferred the remainder of the purchase-money notes to another, who thereby acquired an interest in and lien on the land and personal property to secure the payment of these notes, and when such second transferee thereafter acquired the land and the personalty, which were insufficient to pay all of the purchase-money notes, the value of the land should be applied to this claim or lien of the transferee of such notes, and he should be charged with such proportion of the value of the personalty as the claim of the transferee of the first note bore to his claim.

3. The title to the personal property did not pass under the bond for title until the purchasers had paid all of the purchase-money notes, except those due respectively December 1, 1923, and December 1, 1924, and the indebtedness of the vendor assumed by them.

No. 4495. NOVEMBER 12, 1924.

Equitable petition. Before Judge Custer. Dougherty superior court. June 28, 1924.

B. E. Fouché bought a plantation from Harper and others, paying part of the purchase-money and executing notes for the balance. Fouché sold to Nunnelly and Tanner this plantation together with personal property consisting of live stock and farming equipment. Nunnelly and Tanner paid some cash, assumed some of the notes still due by Fouché to Harper and others, and in addition executed their promissory notes to Fouché as follows: one note for $1000 due January 1, 1921; one note for $1490 due July 1, 1921; one note for $2000 due July 1, 1921; one note for $5000 due December 1, 1923; one note for $5000 due December 1, 1924. Fouché executed to Nunnelly and Tanner his bond to convey the property, both real and personal, upon payment of these notes and the two notes for $5000 each, due Harper and others, which Nunnelly and Tanner had assumed. The defendant, Garrett, acquired the note for $1490 due July 1, 1921, upon an indorsement by Fouché "without recourse."

Under a petition brought by the Citizens First National Bank (the then holder of a judgment issued on the $2000 note due July 1, 1921) against Shemwell, Nunnelly and Tanner, Garrett, Harper, and others, to marshal the assets and fix the equities of all parties, Shemwell was appointed receiver and came into possession as such of the land and personal property. Garrett, the defendant, also intervened. Pending the litigation, Shemwell acquired individually title to the land and all of the notes executed by Nunnelly and

Tanner, except the note for $1490 due July 1, 1921, held by defendant Garrett. While receiver, Shemwell appropriated the personal property to his own use by selling or otherwise disposing of it. In this situation, Shemwell and Garrett agreed to submit to arbitration certain questions of fact, and that the court might render a decree upon the facts as so found. The arbitrators found: (1) That Shemwell was out for the land and personal property $23,984; (2) that the land alone was worth $22,100; (3) that the personal property was worth $1365; (4) that the amount due defendant Garrett was principal $1490, besides interest at 7-½ per cent. from July 1, 1921.

Upon the findings and admitted facts appearing in the record, the court decreed that Shemwell should pay Garrett $602. This conclusion was arrived at in this way: Since Shemwell paid out $23,984 and received back in land value $22,100, he was out $1884, and Garrett was out $1490. The chancellor thought, therefore, that the equities between them ought to be adjusted by dividing the $1365 between them in the proportion to the amount of loss which each had sustained. He therefore gave Shemwell $763 and Garrett $602. It was admitted and conceded by counsel for both sides that the only question for decision by the court below was the amount which, upon equitable accounting, should be paid by Shemwell to Garrett, the holder of the $1490 note.

The bond for title, given by Fouché to Nunnelly and Tanner, describes the notes given by the latter to the former for the purchase-money of the land and personal property therein embraced as follows: "1 certain promissory note of even date herewith, due on or before January 1, 1921, for $1000. 1 note of even date herewith, due on or before July 1, 1921, for $1490. 1 note of even date herewith, due on or before July 1, 1921, for $2000. $5000 to be paid by the assumption of a certain note executed by the said party of the first part, payable to the order of F. H. Harper, H. S. Harper, and G. G. Warde, said note being dated March 4, 1919, and due January 1, 1922, bearing interest from date at 7% per annum. $5000 to be paid by the assumption of a certain note executed by the said party of the first part, payable to the order of F. H. Harper, H. S. Harper, and G. G. Warde, said note being dated March 4, 1919, and due January 1, 1923, bearing interest from date at 7% per annum. 1 note for $5000, bearing

even date herewith and due on or before December 1, 1923, payable to the order of said party of the first part. 1 note for $3758.34, bearing even date herewith and due on or before December 1, 1924, payable to said party of the first part." After the description of the lands and the personalty herein referred to, said bond for title reads as follows: "It is further agreed and understood by the parties to this agreement, that the title to the personal property hereinbefore described shall be and remain in the said party of the first part until all of the indebtedness due party of the first part and the indebtedness assumed by the said parties of the second part and due F. H. Harper, H. S. Harper, and G. G. Warde, excepting, however, the two notes due December 1, 1923, and December 1, 1924, shall have been paid, together with interest thereon, upon the payment of which the legal title to the personal property hereinbefore described shall vest absolutely in said parties of the second part, the title to the real estate hereinbefore described to remain in said party of the first part until all of the purchase-money hereinbefore referred to shall have been paid in full."

In addition to buying said purchase-money notes, given by Nunnelly and Tanner to B. E. Fouché and B. E. Fouché to Harper et al., Shemwell procured from Nunnelly and Tanner for a valuable consideration a quitclaim deed to all of their rights, titles, and interests in and to the lands and personalty purchased by them from B. E. Fouché.

The sole question involved in the record is whether or not the chancellor erred in his finding.

*R. H. Ferrell,* for plaintiff in error.

*Pottle & Hofmayer,* contra.

HINES, J. (After stating the foregoing facts.)

1. The competition here is not between an older lien, embracing two funds or properties, and a junior lien, embracing only one of such funds or properties; but is between the holder of one of a series of purchase-money notes and the holder of the remainder of such notes, which were secured by liens of the same date on land and personalty for the purchase-money of which they were in part given. The lien on the land arose by reason of the fact that the vendor executed and delivered to the purchasers his bond for title in which he obligated himself to convey to them the land upon the payment of their notes given for the purchase-money of both

land and personalty. The lien on the personalty arose by virtue of the fact that the vendor retained, in his bond for title, title to the personalty until certain of said notes were paid, in which event, which did not happen, the title to the personalty was to pass to the purchasers. Garrett acquired from the vendor one of these notes, amounting to $1490, under an indorsement without recourse. Afterwards Shemwell became the transferee and holder of the remainder of said notes without such limited indorsement. Garrett, in effect, conceded in the court below that he did not have a lien or claim on the land or its proceeds.

It is unnecessary to determine the question whether Garrett obtained any interest in or lien on the land by reason of the acquisition of said note under such limited indorsement, for the reason that he does not complain of the ruling of the court which, in effect, held that he did not have such interest or lien. On this question see *Ray* v. *Anderson,* 119 *Ga.* 926 (47 S. E. 205) ; *McLeod* v. *Bank of Abbeville,* 147 *Ga.* 33 (92 S. E. 645) ; *Berry* v. *Van Hise,* 148 *Ga.* 27 (95 S. E. 690) ; *Jordan Mercantile Co.* v. *Brooks,* 149 *Ga.* 157 (99 S. E. 289) ; *Carter* v. *Johnson,* 156 *Ga.* 207 (119 S. E. 22) ; Civil Code (1910), § 4276. Whatever may be the rights of Garrett in the land, certainly the assignment of said note to him under such indorsement did not operate to divest it of its character as a debt for purchase-money under the retention of title to the personal property for which it was in part given. Such transfer vested in Garrett, pro tanto, title to the personalty as security for the payment of this note, and created in his favor a lien upon such property for such purpose. *Jordan Mercantile Co.* v. *Brooks,* supra; *Napier* v. *Bank of LaFayette,* 31 *Ga. App.* 703 (121 S. E. 694). Nor is the question whether Garrett as the transferee of this note had a preference as to the personal property over Shemwell, who afterwards acquired the other purchase-money notes given for the land and personalty, on the ground that the security was insufficient to pay all the notes, for decision by this court. On this question see *Setze* v. *First Nat. Bank of Pensacola,* 140 *Ga.* 603 (79 S. E. 540) ; *Berry* v. *Van Hise,* supra. This question is not for decision, for the reason that Garrett does not except to the judgment of the court which has the effect of denying to him such preference. It was agreed between the parties that the sole question for decision by the court below was the amount, if any, that

was due Garrett as the holder of the above note out of the personalty. So the sole question for our decision is what are the rights of Garrett and Shemwell in the personal property or its proceeds. It is insisted by counsel for Shemwell that Garrett was only entitled to 1490/23,248 of $1365, which was the value of the personal property, on the ground that the entire indebtedness was originally $23,248, of which Shemwell bought $21,758 and Garrett $1490. We can not agree to this contention. This contention would only be sound on the assumption that both parties acquired the original lien of the vendor, amounting to $23,248, in the ratio of $1490 to $21,758.

Treating the transaction between the vendor and purchasers as creating two separate liens, one on the land and the other on the personalty, for the security of these notes, then, in the event that both the land and the personalty were insufficient to discharge all the notes, the land should be charged with its full value; and this value, which was treated by the parties as the equivalent of the proceeds of the land, should be applied toward the extinguishment of the lien on the land; and the value of the personalty, this value being treated by the parties as the equivalent of the proceeds of such property, should be prorated between Garrett and Shemwell in the proportion which the amount due the former bears to the balance due the latter, after the latter's indebtedness has been reduced by the value of the land. This is so, because, if the liens are separate and distinct, the land or its proceeds must necessarily go to extinguish the lien on it, and the personalty or its proceeds should go to discharge the debts secured by the lien on it, which debts can only consist of such balance due Shemwell and the amount due Garrett. If this transaction be held to create but one lien on land and personalty, to secure the purchase-money of both, and Shemwell acquired the entire lien on the land, and he and Garrett acquired the lien on the personalty, to secure the respective purchase-money notes of which each became the holder, then it would be inequitable to permit Shemwell to share in the value of the personalty in proportion to the amounts of the purchase-money notes acquired by each, and at the same time appropriate the value of the land. Such a distribution would practically wipe out the lien of Garrett. Suppose the purchasers had made a payment on the notes in an amount equal to the value of the land, could he

then claim that he would be entitled to the proceeds of the personalty in the ratio which Garrett's debt bore to his original claim? Certainly not. He would only be entitled to be paid out of the personalty in the proportion which his claim, reduced by such payment, bore to the demand of Garrett. The same result follows when he got the land in partial extinguishment of his claim. Civil Code (1910), § 3220; *Semmes* v. *Boykin, 27 Ga.* 47; *Sims* v. *Albea, 72 Ga.* 752.

2. Counsel for Shemwell contends that, under the bond for title, upon the payment of the two purchase-money notes due December 1, 1923, and December 1, 1924, the title to this personal property vested absolutely in the purchasers, and that for this reason Garrett had no further interest in the personalty. We do not think that this is the proper construction of the bond for title. The title to this property was not to vest in the purchasers until they had paid all of the indebtedness due the vendor and the other indebtedness assumed by them, with the exception of their two notes, payable to the vendor on December 1, 1923, and December 1, 1924. They could not acquire absolute title to the personalty by the payment of these excepted notes. They could only acquire such title by the payment of all their indebtedness except these two notes. Not having paid all this indebtedness, the absolute title to the personalty did not pass to them; and the interest of Garrett therein was not defeated by the payment of the two excepted notes.

So we are of the opinion that the court below did not err as against Shemwell in the judgment rendered by him in this case.

*Judgment affirmed. All the Justices concur.*