Harold E. STALEY, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RESOURCES, SOCIAL SERVICES ADMINISTRATION, Respondent.**

No. 6628.

District of Columbia Court of Appeals.

Argued Jan. 15, 1973.

Decided Oct. 26, 1973.

Edward E. Schwab, Washington, D. C., for petitioner.

E. Calvin Golumbic, Assistant Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Wash-

ington, D. C., were on the brief, for respondent.

Before FICKLING and YEAGLEY, Associate Judges, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

Petitioner asks this court to review and reverse an order of respondent [1] denying him public assistance. Consideration of his claim requires a brief review of the District of Columbia public assistance program.

Prior to 1962, public assistance in the District of Columbia was administered under separate laws granting old age assistance, aid to the blind, aid to the permanently and totally disabled, aid to dependent children, and "relief and rehabilitation of indigent residents." The last named category was strictly local and was authorized by appropriations for the District of Columbia.[2]

On October 15, 1962, Congress brought the District of Columbia public assistance programs under one act,[3] establishing the following categories of public assistance: (1) Old Age Assistance; (2) Aid to the Blind; (3) Aid to the Disabled; (4) Aid to Dependent Children; and, (5) General Public Assistance.[4] The Commissioners of the District of Columbia were authorized to "establish and enforce such rules and regulations as may be necessary or desirable to carry out the provisions of this chapter.[5]

The first four categories established by the Act are federally funded and of necessity the District fixed eligiblity requirements for these categories corresponding to the federal requirements. The fifth category "General Public Assistance" is purely local and is not federally funded and in establishing eligibility requirements for it the District was bound by no federal rule or guideline. The District defined General Public Assistance as:

[A] program financed from local funds to provide social services and emergency financial aid to eligible persons *who are unable to work because of a physical or mental disability expected to be of short duration,* and who are not eligible for assistance under any other assistance program. [6 B.D.C.R.R. 400.10 (1970) (emphasis supplied).]

In April 1972, petitioner filed a "Declaration of Need" and sought aid under the General Public Assistance category. He was 46 years of age, suffering from no disability, and had last been employed by VISTA at a salary of $12,000 a year. That employment had ceased on December 2, 1971, and at the hearing petitioner testified that his savings had been reduced to $6.00, he had no other assets, and he owed four months back rent on his apartment. He felt the termination of his employment with VISTA was illegal and had unsuccessfully sought reinstatement. There was little or no evidence that he had sought employment elsewhere.

Petitioner's claim for assistance was denied on the ground that he was not eligible for assistance under General Public Assistance as defined by the District. His appeal is based almost entirely on that section of the Act which provides: "Public assistance shall be awarded to or on behalf of any needy individual . . .."[6] His argument is that the Act provides for as-

---

1. Respondent's present name is District of Columbia Department of Human Resources, Social Rehabilitation Administration.

2. S.R.No.844, 87th Cong., 1st Sess. (hereafter referred to as the Senate Report).

3. D.C.Code 1967, § 3–201 et seq.

4. Id., § 3–202(a).

5. Id., § 3–202(b)(2). It is unnecessary to discuss the change in District of Columbia government from three Commissioners to one Commissioner and a Council. Hereafter we shall refer simply to the action as that of the District.

6. D.C.Code 1967, § 3–203.

sistance to any needy individual, that he has established he is a needy individual and therefore he is entitled to public assistance. This argument necessarily includes his contention that the District has no right "to establish eligibility criteria unrelated to need."

As the first four categories established by the Act are by their wording limited in scope, petitioner's argument must be that the category of General Public Assistance is unlimited in scope and that any and all persons are eligible for assistance under it, provided only that the applicant be needy. We disagree.

■ We think it clear that Congress intended that the District by regulation should define and limit eligibility for assistance under the five categories established in general terms by the Act. For example, category "Old Age Assistance" is limited to those 65 years or older, and category "Aid to the Disabled" is limited to those permanently and totally disabled. In like fashion blindness has been defined to establish eligibility under "Aid to the Blind". And so we think the District could properly establish eligibility for assistance under the category "General Public Assistance." The directive in the statute that public assistance be awarded any needy individual simply means that assistance be given any needy individual eligible under one of the five categories.

The predecessor of "General Public Assistance" was the "relief and rehabilitation of indigent residents" which was a plan of very limited coverage. If Congress had intended, as petitioner asserts that the thrust and purpose of the Act was to afford public assistance to any and all needy persons, it would not have been necessary to establish any categories because in no instance it would not have been necessary to estab-the needy.

And if Congress had intended to grant public assistance to every needy person regardless of age, disability or other cause of need, there surely would have been more discussion of such far reaching legislation and the language of the Act would have been more explicit and specific. If the Act was intended to give aid to all needy persons, it is inconceivable that the Senate Report would have stated that it had been estimated by the Commissioners that enactment of the bill would "entail no additional expenditures" by the District.

■ Finally, we think it plain that Congress, which appropriates funds for the District of Columbia, was well aware of the limited amount of funds at the disposal of the District and recognized that the District in exercising its "valid interest in preserving the fiscal integrity of its programs," could "legitimately attempt to limit its expenditures" for any public assistance program.[7] The District, "charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients,"[8] was authorized, if not compelled, to limit eligibility under the General Public Assistance category to a particular class of needy persons.[9]

As eligibility under Aid to the Disabled was limited to those permanently and totally disabled, the District chose to limit General Public Assistance to those unable to. work because of a physical or mental disability expected to be of short duration. Certainly there is a valid difference between a person able to work and one unable to work because of a disability. We find nothing unreasonable in the District's eligibility requirements for General Public Assistance. Petitioner did not meet those requirements and was properly denied assistance.

Order affirmed.

7. Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

8. Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

9. "A legislature is certainly not obliged to furnish welfare assistance to every inhabitant of the jurisdiction . . . . " Harlan, J., dissenting in Shapiro v. Thompson, 394 U.S. 618, 672, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).