**Emma J. CRAIGG, individually and on behalf of all others similarly situated,**

**v.**

**Albert P. RUSSO, Director, Department of Human Resources, et al., Appellants.**

**No. 78–2004.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 1, 1980.

Decided Oct. 14, 1981.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellants.

Louis P. Robbins, Principal Deputy Corp. Counsel, Washington, D. C., at the time the briefs were filed, also entered an appearance for appellants.

Michael R. Schuster, Washington, D. C., for appellees.

Before ROBINSON, Chief Judge, and WILKEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

The central issue on this appeal, from a summary judgment in the District Court,[1] is whether "cost of home ownership" payments—mortgage assistance—made by the District of Columbia to aged, blind, or disabled public assistance recipients prior to January, 1976, must be continued if the District is to remain eligible for federal grants under Title XIX of the Social Security Act.[2] The problem is posed by Section 212 of Public Law No. 93–66,[3] enacted when the Federal Government assumed responsibility for basic grants for such recipients of public assistance. This provision conditions Title XIX eligibility on state[4] supplemental payments enabling recipients to continue to receive at least as much as they did in December, 1973, the last month that the states had the onus of basic grants.

Determination of this core issue will by no means be a simple exercise. It necessitates resolution of subsidiary questions of District of Columbia law as to whether mortgage assistance payments made prior to federalization of the program were duly authorized. Also involved are questions as to whether the payments must indeed have been authorized to become mandatory under Section 212, or whether under the circumstances it is sufficient that they were in fact made. Presented, too, are questions as to whether such payments are encompassed by the description of mandatory payments that the Social Security Administration has fashioned in its regulations implementing Section 212; and questions relating to whether, if the payments do not fall within the regulatory description, those regulations reflect the proper interpretation of the statutory words and the legislative intent behind them.

In the District Court proceedings, the dispute between the parties centered first on whether the payments were authorized under District of Columbia law, and next on whether they were made pursuant to the District's federally-approved plan for public assistance. This second question bears on whether the mere fact that the payments were remitted—even absent legal authority—was enough to make them mandatory under Section 212, and on whether the payments came within the terms of the federal regulations. Summary judgment in favor of claimants for such payments was granted on the ground that, regardless of the answers to these disputed questions, the payments at issue were of the sort that Congress intended to make mandatory.[5]

We vacate that judgment and remand the case to the District Court with directions to defer final action therein pending completion of appropriate administrative proceedings before the Social Security Administration. Under the federal regulatory scheme,[6] decisions at the administrative level are to be made by that agency, and not by an entity of the state—or in this case, the District of Columbia. Until essential determinations are made by the Social Security Administration, the issues in this case will not be ripe for judicial review, and the claimants will not have sufficiently exhausted available administrative remedies to warrant judicial intervention.

1. *Craigg v. Russo*, Civil No. 76–0591 (D.D.C. July 31, 1978) (memorandum), Appendix (App.) 118.

2. 42 U.S.C. § 1396 et seq. (1976).

3. Pub.L.No.93–66, § 212, 87 Stat. 152, 155–158 (1973). This provision is not codified, but it is reprinted in the notes following 42 U.S.C. § 1382 (1976). The provision has twice been amended, but neither change affects our consideration of the issues in this case. Pub.L.No. 93–233, § 10, 87 Stat. 947, 957–958 (1973) add-ed provisions related to family units with more than one recipient of aid. Pub.L.No.93–335, § 2, 88 Stat. 291 (1974) added provisions related to the bonus value of food stamps.

4. References in this opinion to the states include also the District of Columbia.

5. *Craigg v. Russo, supra* note 1, at 9, App. 126.

6. 20 C.F.R. § 416.121(c) (1980). See notes 58–60 *infra* and accompanying text.

## I

By the 1972 amendments to the Social Security Act,[7] the Social Security Administration took charge of individual state programs for aid to the aged, blind, and disabled. The purpose of this federal takeover was to provide uniform eligibility standards and uniform levels of minimum benefits throughout the country.[8] After passage of the 1972 amendments, however, there was concern that some aid recipients would experience a reduction in their grant amounts in consequence of the federalization of these programs.[9] Consequently, before the amendments became effective in 1974, further legislation was enacted. Section 212 of Public Law No. 93–66 required the states and the District of Columbia—if they wished to remain eligible for grants under Title XIX of the Social Security Act—to continue to make, under certain circumstances, supplemental payments to augment the basic federal grant.[10] The purpose of this provision was to ensure that the aged, blind, and disabled on public assistance rolls "would not lose income as a result of the federalization of the program."[11]

The thrust of this statutory requirement is that a state supplemental payment becomes mandatory when the monthly amount that an individual receives under federal auspices, when added to the individual's other income, is less than the amount that the individual received under the state program in December, 1973—the month immediately preceding the federal takeover—

plus his or her other income for that month.[12] The supplemental payment must be at least sufficient to make up the difference.[13] This basic requirement is refined through a number of provisions embodied either in Section 212 itself or in its implementing regulations. First, under the statute, the assistance that goes into calculating December, 1973, income—the baseline below which the state must not let an individual fall—is the aid that was received in the form of "money payments."[14] Preexisting regulations under other sections of the Social Security Act define "money payments" as "payments in cash, checks, or warrants immediately redeemable at par, made to the grantee or his legal representative with no restrictions imposed by the agency on the use of funds by the individual;"[15] and the Social Security Administration adopted this definition for the purposes of Section 212.[16] Second, to count as baseline income under the statute, the payments by the state must have been made pursuant to a plan approved under one of several titles of the Social Security Act.[17] Third, in order to be covered by Section 212, an aged, blind, or disabled individual must not only have received state assistance in December, 1973, but in the words of the statute must also have been properly "eligible" for that assistance under the state's approved plan,[18] and in the language of the implementing regulations, must have "correctly" received payments under the plan.[19] Finally, under the implementing regulations, only certain income is included under the category of

7. Social Security Amendments of 1972, Pub.L. No.92–603, § 301, 86 Stat. 1329, 1465, (1972) 42 U.S.C. § 1381 (1976).

8. H.R.Rep.No. 231, 92d Cong., 2d Sess. 147 (1972), *reprinted in* [1972] U.S.Code Cong. & Ad.News 4989, 5133.

9. 119 Cong.Rec. 22645 (1973) (remarks of Representative Mills).

10. Pub.L.No.93–66, § 212(a), 87 Stat. 152, 155–156 (1973).

11. 119 Cong.Rec. 22645 (1973) (remarks of Representative Mills).

12. Pub.L.No.93–66, § 212(a), 87 Stat. 152, 155–156 (1973).

13. *Id.* § 212(a)(3)(A), 87 Stat. 155–156.

14. *Id.* § 212(a)(3)(B)(i), 87 Stat. 156.

15. 45 C.F.R. § 234.11(a) (1980) (promulgated Nov. 23, 1971, pursuant to the authority for general rulemaking in 42 U.S.C. § 1302 (1976)).

16. 20 C.F.R. § 416.2050 (1980).

17. Pub.L.No.93–66, § 212(a)(3)(B)(i), 87 Stat. 156 (1973).

18. *Id.* § 212(a)(2)(B), 87 Stat. 155.

19. 20 C.F.R. § 416.121(a) (1980).

"other income" used in calculating the December, 1973, baseline. Essentially, to enter into the baseline figure along with the state's December, 1973, payment, the other income must not have been "aid or assistance,"[20] and it must have been "used in computation of the amount of aid or assistance" given under the state program.[21] These requirements reflect the view that the "other income" provision was designed to capture in the baseline amount only private income that had resulted in a reduction in the recipient's basic grant under the state program.

Within this statutory and regulatory framework, appellees were recipients of aid under the District of Columbia's program for the aged, blind, and disabled, and were converted to the federal supplemental security income program in January, 1974. As homebuyers, they had received under the local program, in addition to their basic grants, a supplemental amount to cover their mortgage payments.[22] After the program was federalized, the District's Department of Human Resources continued to make these supplemental payments for two years, but in January, 1976, discontinued them.[23] This discontinuation was the result of an opinion by the District's Corporation Counsel that there was, and since 1972 had been, no authority under District law for making the payments.[24] The Corporation Counsel concluded that the mortgage assistance payments for that reason might not come within Section 212, and it was on such a theory that District officials have defended cessation of the payments.

The District of Columbia had been making mortgage assistance payments since 1958. In that year, the Board of Commissioners adopted Order No. 58–1084, which authorized payments for costs of home ownership, including mortgage expenses.[25] Then, in December, 1969, that program was rescinded and a more limited one was established pursuant to the District of Columbia Council's Regulation 69–57,[26] as implemented by Order No. 69–691[27] issued by the Mayor-Commissioner. Those provisions authorized "vendor payments"—payments directly to the supplier of goods or services—for "property assessments" on behalf of aged, blind, and disabled recipients on whose property a lien had been secured by the District of Columbia. Although it is unclear whether the term "property assessments" was meant to include mortgage payments, the District continued to make them.[28] Finally, in 1972, the entire scheme of District public assistance was revised. Instead of calculating public assistance payments on the basis of a multitude of special considerations, a system of flat grants was inaugurated, and thereunder all families of the same size received the same monthly payment.[29] It was as a result of this change that the authority for making mortgage assistance payments became unclear. Council Regulation 72–17,[30] which established the flat-grant program, included in the flat grant an average shelter allowance, and did not specifically sanction additional payments for mortgage costs.[31] Moreover, it explicitly rescinded Regulation 69–57, which seemingly had authorized such pay-

20. *Id.* § 416.2050(b)(2).

21. *Id.*

22. *Craigg v. Russo, supra* note 1, at 1, App. 118.

23. *Id.*

24. App. 39 (Memorandum by Corporation Counsel. dated July 23, 1975).

25. Relevant portions of Order No. 58–1084 are quoted in Brief for Appellants at 8.

26. Regulation 69–57, as proposed, is contained in 16 D.C.Register 183–188 (Dec.1969).

27. Order No. 69–691 is *reprinted in* App. 49.

28. *Craigg v. Russo, supra* note 1, at 3–4, App. 120–121.

29. This was accomplished by Council Regulation 72–17, *reprinted in* App. 46.

30. See note 29 *supra.*

31. *Craigg v. Russo, supra* note 1, at 4, App. 121; see Regulation 72–17, § 2, *reprinted in* App. 47.

ments,[32] although it did not rescind Order No. 69–691, which had implemented that regulation. In any event, the District continued to remit mortgage assistance payments until January, 1976, apparently in the belief that they were authorized.[33] At that time, the payments were halted, because of the Corporation Counsel's opinion that they were not.

## II

The initial inquiry in this case, then, is whether the payments were in fact authorized under District of Columbia law after 1972. On the surface they seem not to be, but there are four possible rationales for concluding that they were. First, it is arguable that it was the intent of the Council that they remain authorized after Regulation 72–17. This legislative intent might be indicated by the non-recission of Order No. 69–691;[34] by the fact that the public notice of pendency of Regulation 72–17 did not indicate that termination of the mortgage assistance program was under consideration;[35] and by statements in the legislative history indicating a belief that mortgage assistance payments would not be discontinued under Regulation 72–17.[36] Second, regardless of the Council's intent, it might be contended that such payments were sanctioned legally because Order No. 69–691

was not specifically rescinded, even though the regulation it implemented was repealed.[37] Third, it might be contended that mortgage assistance payments retained their former status because Regulation 72–17, even if it did purport to de-authorize them, was invalid because it was enacted in a manner contrary to the District of Columbia Administrative Procedure Act.[38] And fourth, even if Regulation 72–17 was validly enacted and did indeed de-authorize payments made pursuant to Order No. 69–601 and Regulation 69–57, it can be argued that the payments remained lawful under the original authority for them—Order No. 58–1084—because Regulation 69–57, which purported to rescind that order, did not comport with the District's Administrative Procedure Act.[39]

Whichever way this initial inquiry is answered, however, the question left is whether the mortgage assistance payments were made pursuant to a federally-approved plan, as required by Section 212.[40] It is conceded that they were not specifically mentioned in the District's plan.[41] If, however, it is concluded that the payments were authorized under District law, it can be argued that all relevant District law is incorporated into the plan, and thus the payments were made pursuant thereto.[42] Al-

32. *Craigg v. Russo, supra* note 1, at 4, App. 121; see Regulation 72–17, § 6, *reprinted in* App. 48.

33. *Craigg v. Russo, supra* note 1, at 3–4, App. 120–121.

34. The proposed Regulation 72–17 would have specifically rescinded Order No. 69–691, see § 9 of the proposed regulations, App. 93, but, as we have stated, the version enacted did not.

35. *Craigg v. Russo, supra* note 1, at 9, App. 126.

36. *Id.; e.g.,* Statement by Joseph T. Yeldell, Director, District of Columbia Department of Human Resources (June 28, 1972), *reprinted in* App. 57.

37. See Brief for Appellees at 16, which predicates such an argument based on the fact that the proposed Regulation 72–17 would have expressly rescinded Order No. 69–691, see note 34 *supra*, and on the further fact that the Department of Human Resources relied on both

Regulation 72–17 and Order No. 69–691 as the legal basis for mortgage assistance payments after 1972, see Memorandum by Donald Gray, Acting Deputy Administrator (Oct. 6, 1972), *reprinted in* App. 72 & 115.

38. Appellees made that argument in the District Court, which did not decide the issue. *Craigg v. Russo, supra* note 1, at 5, App. 122; *id.* at 9, n.17, App. 126.

39. Appellees presented this argument, as well, in the District Court, but, again, the court did not resolve it. *Id.* at 4 n.3, App. 121.

40. Pub.L.No.93–66, § 212(a)(3)(B)(i), 87 Stat. 152, 156 (1973).

41. Post-Argument Brief for Appellees at 4.

42. Appellants apparently accept the contention that the plan can be defined, at least in part, through incorporation of pertinent law; they contend simply that in this case, the relevant

ternatively, even if the payments were not duly authorized under local law, it could be contended that they were part of the approved plan because they were in fact made, on the theory that the plan can be established by practice.[43] The First Circuit has considered the circumstances under which it is appropriate to develop such a plan by practice, and has held that if there is an ambiguity in the plan and an official with statewide responsibility clarifies it by indicating actual practice, that can be used to define the plan; but that, in contrast, if there is no ambiguity—that is, there is a direct conflict between a clearly written plan and actual practice—or the only indicia of actual practice is anecdotal evidence of the practices of individual caseworkers, it would not be proper to allow the practice to so shape the plan.[44] The circumstances here seem to fall within the First Circuit's test of plan-defining practice, but this branch of the analysis is not necessarily foolproof. A countervailing argument can be based on caselaw,[45] statutory language,[46] and regulatory provisions[47] which dictate that payments made by mistake should not be considered in determining the content of the plan.

Even an answer to the question whether the mortgage assistance payments were made pursuant to a federally-approved plan is not the end of the road. Whichever way that issue is decided, additional problems arise. If the payments *were* remitted under the District's federally-approved plan, there is the further question whether they were "money payments." By its terms, Section 212 puts into the December, 1973, baseline of income—below which a state may not allow a supplemental security income recipient to drop—only public assistance that assumed the form of "money payments."[48] If, however, the payments were not remitted pursuant to a federally-approved plan, or though made under such a plan were not "money payments," the inquiry must then focus on whether they are "other income." Section 212 provides that, in calculating the baseline, "other income" is to be added to "money payments" made under the federally-approved plan.[49]

Regulations promulgated by the Social Security Administration provide initial answers to these last two inquiries, both in the negative. The fact that the mortgage assistance payments were made for a restricted purpose and directly to the mortgage holder takes them out of the category of "money payments," which must be unrestricted as to use and payable to the aid grantee or his or her legal representative.[50] And since federal regulations provide that "other income" may not be public assistance[51] and must have been considered in calculating the size of the basic grant,[52] the mortgage assistance payments are not includable in the calculation of the baseline as "other income"; because they were public assistance payments, and because they were not considered in fixing the amount of the basic grant that appellees received in addition.

---

law—Regulation 72–17—does not authorize the payment in question. See Post-Argument Memorandum for Appellants at 4–5.

**43.** This theory is urged by appellees. See Post-Argument Brief for Appellees at 4.

**44.** *Bourgeois v. Stevens*, 532 F.2d 799, 806–807 & n.13 (1st Cir. 1976). This case distinguishes *Roselli v. Affleck*, 508 F.2d 1277, 1280 (1st Cir.), aff'g 373 F.Supp. 36, 42 n.5 (D.R.I.1974).

**45.** *Yulling v. Califano*, 474 F.Supp. 601, 610 (S.D.N.Y.1979).

**46.** Pub.L.No.93–66, § 212(a)(2)(B), 87 Stat. 152, 155 (1973); see note 18 *supra* and accompanying text.

**47.** 20 C.F.R. § 216.121(a) (1980); see note 19 *supra* and accompanying text.

**48.** Pub.L.No.93–66, § 212(a)(3)(B)(i), 87 Stat. 152, 156 (1973); see notes 14–16 *supra* and accompanying text.

**49.** Pub.L.No.93–66, § 212(a)(3)(B)(ii), 87 Stat. 152, 156 (1973); see note 12 *supra* and accompanying text.

**50.** See notes 14–16 *supra* and accompanying text.

**51.** 20 C.F.R. § 416.2050(b)(2) (1980); see note 20 *supra* and accompanying text.

**52.** 20 C.F.R. § 416.2050(b)(2) (1980); see note 21 *supra* and accompanying text.

Appellees contend, however, that these regulatory definitions are too restrictive, and that the congressional intent underlying Section 212 was to make mandatory the continuation of payments such as those at issue here.[53] Similarly—although the proceedings in the District Court did not extend to express consideration of the significance of the terms "money payment" and "other income"—the grant of summary judgment for appellees was premised on the belief that, legal niceties and technical distinctions aside, a contrary judgment would be inconsistent with the congressional purpose behind Section 212.[54]

Examination of the merits of these contentions involves, as the first step, ascertainment of just what Congress intended. The legislative history is sparse, but what little there is signifies that Congress sought to save recipients of state aid to the aged, blind, and disabled from experiencing a reduction in benefits as a result of the federalization of the program.[55] Appellees contend, and the District Court seems to have agreed, that it would be contrary to this indication of intent to allow the District of Columbia to reduce any benefits for any reason after the date that the Federal Government assumed responsibility for basic grant amounts. It would also be reasonable, however, to conclude that the legislative intent was to prevent reductions only in certain types of payments, and only when those reductions flowed from the fact of federal takeover. This approach seems more akin to that taken by the Social Security Administration in its regulations, and that argued by the appellants in the District Court and here.

### III

Congress has entrusted the Social Security Administration with administration of the federal scheme of aid for the aged, the blind, and the disabled, including importantly Section 212.[56] Whatever the interpretation the Administration would place on that section when viewed in the context of the events affecting former recipients of mortgage assistance payments in the District of Columbia, its views are apt to command great respect on judicial review.[57] The Administration has not, however, been afforded the opportunity to consider the questions raised by the parties in the District Court and here. This omission is the crucial flaw in the proceedings to date.

This is particularly so since the Social Security Administration has stipulated by regulation positively that it must make the determination at the administrative level as to whether a state's payments have become mandatory under Section 212.[58] These regulations provide that such decisions, when made by state—or in this case, District of Columbia—officials or agencies, are not conclusive, and that the Administration

---

**53.** Post-Argument Brief for Appellees at 2–3, 4–6.

**54.** *Craigg v. Russo, supra* note 1, at 6, App. 123; *id.* at 9, App. 126.

**55.** 119 Cong.Rec. 22645 (1973) (remarks of Representative Mills).

**56.** By its terms, the administration of § 212 is entrusted to the Secretary of Health, Education, and Welfare. Pub.L.No.93–66, § 212, 87 Stat. 152, 155–158 (1973). The Secretary of Health, Education, and Welfare delegated authority for all programs for Supplemental Security Income for the aged, blind, and disabled to the Social Security Administration. 20 C.F.R. § 416.105 (1980). With the reorganization of the Department of Health, Education, and Welfare, this agency is now part of the Department of Health and Human Services.

**57.** *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965); *Association of Bituminous Contractors v. Andrus,* 189 U.S.App.D.C. 75, 85, 581 F.2d 853, 863 (1978).

**58.** 20 C.F.R. § 416.121(c) (1980). The agency was extremely clear on this point. When the regulations were first proposed, four of the five entities that submitted adverse comments objected to the provision. "No change has been made," the agency responded; "since supplemental security income is a Federal program, it would be inconsistent for the State to make binding decisions affecting a Federal program." 39 Fed.Reg. 32024 (1974). Indeed, the District's Corporation Counsel highlighted this point in the memorandum in which the mortgage assistance payments were originally determined to be unauthorized under local law. See Corporation Counsel's Opinion, July 23, 1975, App. 39, 41.

need not even consider them.[59] At the least, Administration consideration of the problem expectably would shed new light on the significance of the facts, and thus clarify the inquiry on whether under Section 212 the District of Columbia may properly discontinue the payments in suit; at the most, the Administration might be influenced by appellees' arguments to alter its policies or statutory interpretations. In any event, the agency must be given an opportunity to bring its special knowledge and analytical expertise to bear on the questions that this controversy presents.

The case as it now stands, lacking administrative treatment by the Social Security Administration, has elements both of unripeness for judicial review and failure by appellees to exhaust their administrative remedies. Regardless of which way the problem is characterized, the considerations are similar.[60] In these particular circumstances, it manifestly would be inappropriate for us to undertake to decide the issues without the benefit of an administrative decision by the federal agency charged with implementing the federal statute that is central to the case. Accordingly, we vacate the judgment appealed from and remand the case to the District Court with directions to retain jurisdiction but defer further action pending the outcome of administrative proceedings to be initiated by appellees before the Social Security Administra-

tion, and thereupon to reconsider the matter in light thereof.[61]

*So ordered.*

---

**59.** 20 C.F.R. § 416.121(c) (1980).

**60.** Compare *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691 (defining the essential elements of ripeness as "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration") and *National Automatic Laundry & Cleaning Council v. Schultz,* 143 U.S.App.D.C. 274, 280–282, 443 F.2d 689, 695–697 (1971) (discussing and applying *Abbott Laboratories*) with *United States v. Newmann,* 478 F.2d 829, 831 (8th Cir. 1973) (distilling from Supreme Court cases an exhaustion analysis that balances the agency's interest in "having an opportunity to make a factual record and exercise its discretion and expertise without the threat of litigious interruption; . . . discouraging frequent and deliberate flouting of the administrative process; and . . . correcting its own mistakes and thereby obviating unnecessary judicial proceedings"

against the burden to the plaintiff if review of the agency action is denied), *discussed with approval* in K. Davis, Administrative Law of the Seventies, § 20.01, at 449–450 (1976). The fact that the procedural posture of the case is a class action does not appreciably affect the exhaustion analysis in the case at bar. See *Phillips v. Klassen,* 163 U.S.App.D.C. 360, 367, 502 F.2d 362, 369, *cert. denied,* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974) ("it is generally agreed that exhaustion by at least one member of the class is a necessary prerequisite for a class action").

**61.** By order of July 30, 1978, the District Court directed resumption of the payments in question, which had been terminated January 1, 1976. Our disposition of this appeal is not intended to preclude continuation of these payments pending administrative proceedings and a final disposition by the District Court.