Nettie T. BURT, et al., Appellants,

v.

DISTRICT OF COLUMBIA, et al., Appellees.

No. 85–575.

District of Columbia Court of Appeals.

Argued Feb. 18, 1986.
Decided May 7, 1987.

---

Steven M. Schneebaum, with whom Michael R. Schuster, Washington, D.C., was on the brief, for appellants.

Leo Gorman, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the briefs were filed, Charles L. Reischel, Deputy Corp. Counsel, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellees.

**618**

Before NEBEKER, BELSON and STEADMAN, Associate Judges.

BELSON, Associate Judge:

Appellants are a class of elderly or disabled homeowners. They signed agreements with the District of Columbia, accepting grants to help them meet their mortgage obligations on the condition that they allow the District to record and enforce a lien on their property. Appellants asked the trial court to declare that, because the District government lacked the authority to make the grants after 1972, the liens that accompanied grants made after that year were *ultra vires* and unenforceable. Appellants also asked the court for injunctive relief to prohibit the District from enforcing the liens and to obtain refunds for the amount of any released lien that represented payments made after 1972. The trial court rejected the appellants' contentions, and granted the District's motion for summary judgment. We affirm.

This litigation had its origin more than eleven years ago, when the District ceased making mortgage assistance payments to the appellants. The United States Court of Appeals for the District of Columbia Circuit has recited the earlier history of this litigation in *Craigg v. Russo*, 215 U.S.App.D.C. 110, 667 F.2d 153 (1981), and there is no need to repeat the history here. Suffice it to say that from 1958 through 1972, the District had a program through which the Department of Human Services (DHS) made mortgage assistance payments to eligible elderly and disabled homeowners. Payments under this program were conditioned on the District's recording a lien on the recipient's property. Each recipient signed an agreement authorizing the District to record a lien on his property.

In 1972, the Council repealed the regulation which provided the legislative basis for the mortgage assistance program. *See* Regulation 72–17, 19 D.C. Reg. 211 (1972). DHS, however, continued to make the payments. DHS ceased making the payments in 1976, after the Corporation Counsel opined that "there was no present authority for the Department of Human Services to make the mortgage [assistance] pay-

ments." Release of Liens Against Property, Op.Corp. Counsel 4 (July 23, 1975). Appellants sued in the United States District Court, seeking a ruling that amendments to the Social Security Act, 42 U.S.C. § 1396 *et seq.* (1983), required the District of Columbia to continue making the mortgage assistance payments. *See* Pub.L. No. 93–66, § 212, 87 Stat. 152, 155–58 (1973). Ultimately, that litigation concluded with a ruling that the District was not required to continue the payments. *Craigg v. Russo*, No. 76–0591 (D.D.C. March 10, 1983) (unpublished order). Appellants next brought this suit, seeking a declaratory judgment that the District was not entitled to the protection of the liens securing payments made after 1972.

■ We focus on whether, after 1972, the District was empowered to condition appellants' receipt of mortgage assistance payments upon the placement of liens on appellants' homes. The liens asserted here are valid only if the Department of Human Services was authorized by law to use such liens to secure monies paid under the mortgage assistance program. *See Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 585, 72 S.Ct. 863, 865, 96 L.Ed. 1153 (1952) (executive's power must stem from either statute or constitution).

■ At the time of the asserted creation of the contested liens, the Mayor had statutory authority to file a notice in the Office of the Recorder of Deeds

in any case where public assistance in the form of old-age assistance or aid to the disabled is granted to any person under this chapter, and such notice shall constitute and have the effect of a lien in favor of the District against the real and personal property of such person for the amount of such public assistance which theretofore has been granted or which may thereafter be granted to, or on behalf of, such persons.

D.C. Code § 3–217(b) (1967 & 1973) (current version at D.C. Code § 3–214.1(b) (1986 Supp.)). To determine whether DHS was authorized to impose the liens at issue

here, we need only apply the language of the statute.

First, there can be little question that the mortgage assistance payments were "public assistance" as contemplated by § 3–217(b). "Public assistance" was defined as "payment in or by money ... to, or for the benefit of, needy persons." D.C. Code § 3–201 (1973) (current version at D.C. Code § 3–201.1 (1986 Supp.)). The mortgage assistance payments, which were, to track the definitional language, "payment[s] in or by money," and were "for the benefit of needy persons," plainly fall within this definition.[1]

The second question is whether the payments were "in the form of old-age assistance or aid to the disabled." Arguing that they were not, appellants point out that the mortgage assistance payments were made through the local program called "General Public Assistance," rather than through the specific federal programs called "Old Age Assistance" or "Aid to the Disabled." *See Craigg v. Russo, supra,* 215 U.S.App. D.C. at 113, 667 F.2d at 156 (recipients received payments under local programs); Release of Liens Against Property, Op. Corp. Counsel 1 (July 23, 1975). Appellants cite the 1986 version of the District of Columbia Code, which capitalized the words "old-age assistance" and "aid to the disabled" so that the phrase reads "in the form of Old Age Assistance and Aid to the Disabled." D.C. Code § 3–214.1(b) (1986 Supp.). Using the 1986 Code as their guide, appellants argue that the District was authorized to place liens only on the homes of recipients who received payments under federal programs specified in the current § 3–214.1. Because the mortgage assistance payments were paid out of the local program called General Public Assistance, rather than the federal Old Age Assistance and Aid to the Disabled programs,[2] appellants assert, the District was not authorized to place liens on their homes.

We note, however, that in § 3–214.1's predecessors, D.C. Code §§ 3–217(b) (1967 & 1973) and 3–219(b) (1981), the words "old-age assistance" and "aid to the disabled" were not capitalized. Moreover, in the District of Columbia Public Assistance Act of 1982, which reenacts and amends "without substantive changes" the former version of the public assistance provisions, the words "old-age assistance" and "aid to the disabled" are not capitalized. D.C. Law No. 4–101, § 1401(b), 1981–1982 D.C. Stat. 340, 365. Apparently, the publishers capitalized these words during the codification process.

The District of Columbia Code establishes prima facie the laws of the District of Columbia. 1 U.S.C. § 204(b) (1982).[3] When the District of Columbia Statutes-at-Large are inconsistent with the Code, however, the former must prevail. *See* D.C.Code § 1–1605 (1981); *cf. Stephan v. United States,* 319 U.S. 423, 426, 63 S.Ct. 1135, 1136, 87 L.Ed. 1490 (1943) (per curiam); *Watson v. United States,* No. 84–1466, slip op. at 16–17 (D.C. April 21, 1987); *District of Columbia v. Berenter,* 151 U.S. App.D.C. 196, 201, 466 F.2d 367, 372 (1972). The fact that in the Statutes-at-Large the words "old-age assistance" and "aid to the disabled" are not capitalized leads us to conclude that the District's lien-placing authority is not limited to monies granted under those particular federal programs, *viz.,* Old Age Assistance and Aid to the Disabled. We interpret the words "in the

---

1. We note that in *Craigg v. Russo, supra,* 215 U.S.App.D.C. at 115, 667 F.2d at 155, the U.S. Court of Appeals placed a very restrictive construction on the words "money payments" in the light of certain preexisting regulations under the Social Security Act. In construing the different language of the D.C. Code, "payment in or by money," we give effect to the plain meaning of that language.

2. *Cf. Staley v. District of Columbia,* 310 A.2d 842, 843 (D.C.1973) (distinguishes local "General Public Assistance" from federally funded public

assistance programs); D.C.Code § 3–202.1 (1986 Supp.) (former version at D.C.Code § 3–202(a) (1981)).

3. Certain titles of the D.C. Code have been reenacted as codified, and thus establish legal evidence of the law contained in those titles; Title 3, which contains the provisions at issue in the present case, however, has not been reenacted. *See* A. Dixon & D. Clarke, *Preface* to D.C.Code xxiii (1981).

**620**

form of old-age assistance and aid to the disabled" to permit the District to record a lien when it assists the elderly or disabled through a program directed to them as such, regardless of whether the assistance was rendered in connection with a specific federal program.

■ Such an interpretation is consistent with the recompensatory policy expressed in D.C.Code § 3–214.1 (1986 Supp.), and former §§ 3–217 (1967 & 1973) and 3–219 (1981). There has long been a policy in the District of obtaining remuneration for the types of public assistance at issue here. *See Ottenberg v. Ottenberg*, 194 F.Supp. 98, 105 (D.D.C.1961). Statutory liens provide beneficial remedies for enforcing payment of just debts, and a liberal interpretation of such lien laws is justified as serving the law's overall remedial objectives. *See* 3A Sutherland, Statutory Construction, § 69.02 (4th ed. 1986). Only if we interpret the lien-granting law more broadly than the appellants urge will we be able to harmonize the statutory language with the recoupment policy which underlies it.[4] Moreover, it is sensible to regard the continuation of DHS's practice of making loans after 1972 to have been on the same terms as loans made earlier under the same program. We therefore hold that § 3–214.1(b), and the former §§ 3–219(b) and 3–217(b), authorized the District to place liens on the homes of elderly and disabled persons who received public assistance through programs specifically targeted at such persons. Since the mortgage assistance program was "public assistance," and was "in the form of old-age assistance or aid to the disabled" as we have interpreted those words, we conclude that the District had authority to place the liens on the homes of appellants.

■ Lastly, we consider appellants' argument that because the mortgage assistance payments themselves were not authorized, the District was not authorized to place the liens on the appellants' homes.

Our analysis of this argument does not require us to determine whether the payments were, indeed, unauthorized. The Code section at issue, former D.C. Code § 3–217(b) (1973), gave the Mayor authority to record a lien *"in any case* where public assistance in the form of old-age assistance or aid to the disabled is granted...." (Emphasis added.) Since the statutory language empowered the Mayor to place a lien on the home of a recipient "in any case" in which public assistance was granted, the loans made here triggered the Mayor's authority, regardless of whether they were, or were not, authorized.

Since the Mayor had authority to place liens on the homes of persons who received mortgage assistance payments, we conclude that the trial court correctly granted the District's motion for summary judgment.

*Affirmed.*

---

4. Unlike statutes that merely grant liens, statutes that countermand the common law rule of the priority of earlier liens have been construed narrowly. *See Franklin Investment Co. v. Dis-* *trict of Columbia,* 462 A.2d 447, 450–51 (D.C. 1983); *Malakoff v. Washington,* 434 A.2d 432, 435 (D.C.1981).