**DISTRICT OF COLUMBIA, Appellant,**

v.

**FRANKLIN INVESTMENT CO., INC., Appellee.**

**No. 14178.**

District of Columbia Court of Appeals.

Argued April 6, 1979.

Decided July 17, 1979.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Bernard D. Lipton, Silver Spring, Md., for appellee.

Before KELLY, KERN and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

This appeal presents a single issue: whether a chattel mortgagee's security interest in an automobile prevails over the District of Columbia's interest in obtaining payment of the registered owner's unpaid parking tickets. Franklin Investment Co., Inc. (appellee) paid the outstanding tickets under protest in order to repossess the automobile and then sued the District for a refund in Small Claims court.[1] The District of Columbia appeals the $130 judgment entered in favor of Franklin Investment Co. (Franklin Investment) by the court.[2] We affirm.

---

1. Although appellee tendered additional amounts for storage and towing costs in order to reclaim the automobile, these payments were not contested.

2. This court granted the District's application for allowance of an appeal from the Small Claims and Conciliation Branch of Superior Court, pursuant to the provisions of D.C.Code 1973, § 11–721(c); D.C.App.R. 6(d). An application may be allowed where the appeal in-

## I.

Franklin Investment, a licensed sales finance company, held a conditional sales contract[3] and security interest filing on a 1974 Buick registered to Beverly Childs, a Maryland resident. When the vehicle was impounded by the District police, Ms. Childs notified Franklin Investment rather than paying the eleven outstanding tickets herself. Pursuant to its customary practice, Franklin Investment sought to repossess the car from the District, and tendered $37.50 to cover towing and storage costs. On this occasion, however, the property clerk of the police department informed appellee that release of the vehicle could be secured only upon payment of the outstanding parking tickets, as required by D.C.Code 1973, § 40–603(k)(3). To obtain possession of the vehicle prior to its sale at public auction,[4] appellee chose to pay the $130 and sue for a refund.

In a motion to dismiss appellee's claim, the District contended in Small Claims court that a lienholder is subject to D.C. Code 1973, § 40–603(k)(3), which provides:

*The owner of such impounded or immobilized motor vehicle, or other duly authorized person,* shall be permitted to repossess or to secure the release of the vehicle *upon the depositing of the collateral required for his appearance* in the Superior Court of the District of Columbia to answer for each violation for which there is an outstanding or otherwise unsettled traffic violation notice or warrant. [Emphasis supplied.]

The District argued that payment of the $130 collateral by Franklin Investment was a prerequisite to release of the vehicle, and should be recouped from the debtor as a reasonable expense of retaking. *See* D.C. Code 1973, § 28:9–504. The trial court disagreed, concluding that a lienholder is not an "owner or other duly authorized person" within the meaning of § 40–603(k)(3). The court stated:

In the absence of a more definite statutory criterion of ownership, this court will give effect to what it discerns as the plain meaning of the statute, that is, to ensure an appearance in this court to answer for reach outstanding warrant or violation. Requiring collateral to ensure the appearance of the plaintiff in this instance is tantamount to a forfeiture. As plaintiff correctly pointed out, [it] is a stranger to any alleged traffic offenses and could not prevail factually at a hearing on the traffic charges.

We agree with the trial court that the District cannot require a secured creditor to answer for the outstanding parking tickets of its conditional vendee.

## II.

The Corporation Counsel contends on appeal that D.C.Code 1973, § 40–603(k)(3), in effect, gives the District a security interest or lien in the impounded vehicle to the extent of unpaid tickets or warrants. This lien, the Corporation Counsel urges, confers a right to withhold release of the vehicle

volves a question of law which has not been, but should be, decided by this court. *See Karath v. Generalis*, D.C.App., 277 A.2d 650, 651 (1971).

**3.** Appellee was an assignee of the seller, Monroe Auto Center, and therefore, under the contract retained title until all payments were made by Ms. Childs. In this jurisdiction, however, a specific reservation or retention of title in the conditional sale agreement is "nothing more than a security interest invocable only upon default by the buyer." *See District of Columbia v. Hamilton National Bank*, D.C.Mun. App., 76 A.2d 60, 63 (1950) (footnotes omitted).

**4.** D.C.Code 1973, § 4–160(a) provides for public auction of motor vehicles which remain in custody of the property clerk for more than 60

days without being claimed and repossessed, and specifies the allocation of sale proceeds. Prior to sale of a motor vehicle under this section, the property clerk must notify holders of liens recorded in the Office of the Recorder of Deeds of the District of Columbia of the impending sale. The lienor must remove the property within 30 days or the liens will be declared null and void. D.C.Code 1973, § 4–160(b).

Since the security interest in this case was filed with the Maryland Motor Vehicle Administration, it would appear that there is no lien or liens of record in the D.C. Recorder of Deeds office.

until the tickets are satisfied by the "owner . . . or other duly authorized person." To effectuate the legislative intent, it is the District's position that Franklin Investment Co. must be deemed a "duly authorized person" for purposes of claiming the vehicle and depositing collateral.

The legislative history of D.C.Code 1973, § 40–603(k) is scant, indicating only that the Senate intended to strengthen the District's right of impoundment to facilitate collection of outstanding tickets. S.Rep.No. 92–489, 92d Cong., 1st Sess. 21 (1971). Prior to the 1971 amendment, a vehicle could be impounded only if found illegally parked, and only for the specific violation precipitating impoundment. *See* District of Columbia Highways & Traffic Regs., pt. I, art. XIII, § 91 (1968) [hereinafter Traffic Regs.]. Currently, the police are authorized to impound vehicles against which there are two or more outstanding traffic violation notices or warrants. D.C.Code 1973, § 40–603(k)(1).[5] The owner of the vehicle is presumed to be the operator, and, therefore, responsible for the parking violations, unless he proves to the contrary. *See* Traffic Regs., pt. I, art. II, § 3; art. XIII, § 90. Thus to regain possession of the impounded vehicle he must post collateral security for his appearance in Superior Court to answer for the traffic violations.[6] D.C.Code 1973, § 40–603(k)(3). The owner or duly authorized person has the option of requesting a trial date or electing to forfeit the collateral in lieu of trial.[7] Alternatively, if he never claims the vehicle, it will be considered a lost or abandoned automobile and disposed of pursuant to D.C.Code 1973, § 4–160(a).

By contending this statutory scheme creates a lien, the District seeks to invoke the long established principle that

"a person in possession of property under a lien is the owner of it against all the world and even against the actual owner until his claim is paid; and no one, not even the actual owner, has any right to disturb his possession, without previous payment of such claim." *Brown v. Petersen*, 1905, 25 App.D.C. 359, 363. [*Gordon v. Sullivan*, 88 U.S.App.D.C. 144, 146, 188 F.2d 980, 982 (1951).]

As we read the relevant statute, however, the charge imposed is directed toward enforcement of the owner's duty to appear in court, and thus is closer in nature to bail than to a lien. Section 40–603(k)(3) expressly makes release of the vehicle to a duly authorized person contingent upon "the depositing of the collateral required for *his appearance* in the Superior Court of the District of Columbia to answer for each violation." [Emphasis supplied.] As presently used, of course, a deposit of collateral constitutes full retributive payment, and is dispositive of the violation without the necessity of a court appearance.

It is revealing to compare § 40–603(k)(3) with common statutory liens such as those for water charges (D.C.Code 1973, § 43–1521c), for storage of motor vehicles (D.C.Code 1973, § 38–205), for unpaid taxes (D.C.Code 1973, § 47–1011), and for federal tax liens (26 U.S.C. § 6323 (1967)). An essential characteristic of these statutory liens is the right to enforce the lien by sale of the involved property. In contrast, the only sale procedure applicable to an impounded vehicle appears in the statutory sections governing disposition of unclaimed property by the police department. D.C. Code 1973, § 4–160(a). No provision is

---

**5.** The police can also impound vehicles parked on private or public property (other than public highways) without consent, and require posting of collateral. D.C.Code 1973, § 40–810.

**6.** Commission of an act forbidden by the traffic regulations constitutes a misdemeanor. Traffic Regs., pt. I, art. II, § 3 (1968).

**7.** According to a leading treatise:
  Municipal parking regulations generally are enforced through citation, bail, waiver

thereof, or appearance and trial, imposition of fine, or imprisonment. In large cities, the bail in a small and usually standard amount is waived and forfeited without further proceedings. [7 McQuillin, Municipal Corporations § 24.651, at 758 (3d ed. 1968).]
Under Super.Ct.Cr.R. 35(b) a forfeiture is final unless an application is made to vacate or set aside the forfeiture within 90 days. *See, e. g., District of Columbia v. Jones*, D.C.Mun.App., 183 A.2d 391 (1962).

made, however, for payment of traffic tickets out of the sale proceeds. The only debts to be satisfied from an auction of abandoned property are expenses of sale and custody.[8] Rather than creating a statutory lien, the impoundment statute allows substitution of collateral security for the scofflaw's appearance in court.

■■■ Even assuming creation of a statutory or possessory lien [9] for unpaid tickets, the District would have a superior right to possession against the owner but not necessarily against a prior lienholder. It is axiomatic that a prior lien gives a prior legal right ("first in time, first in right"), except where statute varies the common law rule. *See, e. g., District of Columbia v. Hechinger Properties Co.*, D.C.App., 197 A.2d 157, 160 (1964). *See also United States v. Comptroller of City of New York*, 248 F.Supp. 939, 941 (S.D.N.Y.1965).

■■■ Franklin Investment noted its security interest on the certificate of title issued July 21, 1977, and, therefore had a perfected interest under Maryland law. See Md. Transp.Code Ann. § 13–202 (1977).[10] The District did not impound the vehicle until April 1978. Thus, on default, Franklin Investment, as holder of a prior recorded security interest, was entitled to possession of the collateral. *See* D.C.Code 1973, § 28:9–503. *See also* D.C.Code 1973, § 40–702.

The District contends additionally that the impoundment provision authorizes release of the vehicle only to an "owner or duly authorized person." Thus, in order to reclaim the vehicle, the District argues, Franklin Investment must first admit its liability for the parking tickets, and its status as an owner or duly authorized person.

■■■ After examining the statutory context of § 40–603(k), we conclude that the "owner or duly authorized person" contemplated does not include a chattel mortgagee, even one whose right to possession has accrued on default by the conditional vendee. Rather, § 40–603(k) applies to the registered owner, his legal representative, or a person authorized by the owner to operate the vehicle. A chattel mortgagee still has a right to claim the vehicle. However, the mortgagee's right to take possession flows, not from the impoundment provisions, but from the UCC provisions governing secured transactions. *See* D.C.Code 1973, § 28:9–503.

■■■ It is well established in this jurisdiction that "[s]omething more than a lien on the property, though presently and summarily enforceable, is necessary," to establish ownership. *Mason v. Automobile Finance Co.*, 73 App.D.C. 284, 287, 121 F.2d 32, 35 (1941).[11] In light of the objects and purposes of the statute, there appears no reason to expand the meaning of "owner" to include a chattel mortgagee. As we have indicated, the impoundment remedy is directed toward insuring the appearance of the culpable party in court to answer for his parking violations. To this end, ownership creates a presumption of culpability due to

---

**8.** When the property in custody is a motor vehicle with liens of record, unclaimed by the lienholder, the Code also makes the sale proceeds available for payment of the liens. D.C. Code 1973, § 4–160(b). This provision, in effect, allows a buyer to take free and clear of all liens of record.

**9.** A common law lien, in contrast to a statutory lien, arises by implication of law and bestows a privilege to retain property in possession as security for the owner's debt or obligation. *See generally* 51 Am.Jur.2d *Liens* § 20 (1970).

**10.** The security interest filed in Maryland remained perfected even when the vehicle was removed to the District of Columbia. *Streule v. Gulf Finance Corp.*, D.C.App., 265 A.2d 298,

301 (1970). *See also* D.C.Code 1973, § 28:9–103(4).

**11.** In *Mason* the court held that a chattel mortgagee could not be considered the owner of a vehicle involved in a collision for purposes of imposing statutory liability. As the court reasoned, the object of the statute was to place liability upon the person in a position to allow or prevent use of the vehicle by irresponsible drivers, not upon one having a naked legal title with no immediate right of control. The definitional section has since been amended, codifying the holding in *Mason* that a conditional vendee, or mortgagor entitled to possession, is considered the owner for purposes of the Motor Vehicle Safety Responsibility Act. D.C.Code 1973, § 40–418(g).

the inconvenience of keeping watch over an illegally parked vehicle to ascertain its operator. The inference of culpable behavior does not attach, however, to a secured party whose right to repossess accrues after the parking violations.

Although the District has an interest in securing payment of outstanding tickets, particularly from nonresident violators, the obligation cannot be imposed on the innocent chattel mortgagee. Unlike the owner or operator, the mortgagee is not a wrongdoer. In *United States v. One Cadillac Town Car Automobile*, 57 App.D.C. 183, 186, 18 F.2d 1005, 1007 (1927), the court permitted an innocent lienor to claim a vehicle seized for use in illegally transporting liquor, and avoid forfeiture of the vehicle, because under the relevant prohibition statute "a person is the offender, and the forfeiture of the vehicle extends only to the interests of those sharing in his guilt by having notice that it was to be illegally used."

The mere existence of a security interest does not impose contract or tort liability upon a secured party for the debtor's acts or omissions. D.C.Code 1973, § 28:9–317. Nor should a security interest in an impounded automobile automatically shift responsibility for the debtor's criminal acts to the mortgagee.

The District, of course, retains its right to payment from whoever was the registered owner at the time of the parking violation. It simply loses the ready "leverage" arising from seizure of the vehicle.

*Affirmed.*