FRANKLIN INVESTMENT CO., INC., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 82-187.

District of Columbia Court of Appeals.

Argued Jan. 24, 1983.

Decided June 13, 1983.

Bernard D. Lipton, Silver Spring, Md., for appellant.

Lutz Alexander Prager, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Steven H. Leventhal, Asst. Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before BELSON and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

BELSON, Associate Judge:

This is an appeal by Franklin Investment Company, Inc. from an order of the trial court dismissing its action for replevin against the District of Columbia. The trial court rejected appellant's argument that it was not required to pay the registered owner's impoundment and storage fees in order to secure the release of an impounded vehi-

cle on which it held a lien. *See* D.C.Code § 40–703(k) (1981). We reverse.

## I

Franklin Investment Company, Inc. (Franklin), a licensed sales finance company incorporated in the District of Columbia, held a conditional sales contract for a security interest in a 1974 Ford Mustang II purchased by Marion Rey Edwards on February 16, 1979. The security interest was recorded on March 5, 1979 with the District of Columbia Bureau of Motor Vehicle Services.

On February 1, 1980, Edwards defaulted on his loan payments and in May 1980, Franklin sought to repossess the vehicle. Unbeknownst to Franklin, the vehicle was impounded by the D.C. Department of Transportation on or before May 1, 1980. On June 18, 1980, Franklin received notice by mail from the Metropolitan Police Department informing it for the first time that the vehicle had been impounded; that it would be in police custody for more than 60 days as of June 30, 1980; and that if certain storage and impounding fees were not paid by Franklin by June 30, the vehicle would not be released but would instead be "considered abandoned property and disposed of as provided by law." *See* D.C. Code § 4–152 *et seq.* (1981). Upon its inquiry, Franklin was informed by the police that the amount due for the towing, storage, and notice costs was $263.00.[1]

Rather than pay this amount, Franklin filed an action in replevin against appellee on June 26, 1980, *see* Super.Ct.Civ.R. 64–II,

seeking immediate possession of the vehicle and a judgment that the towing, storage, and notice fees were "invalid and void" as against it, a lienholder. *See* D.C.Code § 40–703(k)(3), (4). Appellee moved to dismiss the complaint. The trial court granted appellee's motion, holding that towing and storage fees constituted statutory liens superior to a chattel mortgagee's security interest.[2]

Franklin promptly filed a motion to alter or amend the trial court's judgment. *See* Super.Ct.Civ.R. 59(e). In its motion, Franklin contended that even if § 40–703(k)(4) created a valid statutory lien for towing and storage charges, the court should limit the amount which the District of Columbia is able to collect for storage fees to $150, the same monetary limit placed on a private garage keeper's lien for storage under D.C. Code §§ 38–202(a), –205 (1981).[3]

The trial court denied Franklin's motion to alter or amend judgment. While noting that a $150 limit on storage fees, or equivalent 50 day notice period for impoundment would not be unreasonable, the court found that the private garage keeper's provisions of §§ 38–202(a), –205 did not support the imposition of a $150 limit on towing and storage charges under § 40–703(k). Franklin then noted this appeal.

## II

In *District of Columbia v. Franklin Investment Co.,* 404 A.2d 536 (D.C.1979) (*Franklin I*), we addressed the issue of whether a chattel mortgagee's security interest in an automobile prevailed over the

---

1. The charges were itemized as follows: $50.00 fee for towing by Department of Transportation; $3.00 per day storage charges; $2.00 each for two certified letters to Edwards and Franklin, and a $20.00 fee for towing by the Police Department.

2. In the trial court, the District of Columbia placed its main reliance upon the argument that the property in question was abandoned and that therefore the provisions of D.C.Code §§ 4–159, –160 (1973) (recodified as D.C.Code §§ 4–160–161 (1981) controlled disposition of the case. The trial judge granted the defend-

ant's motion to dismiss on the basis that those sections applied. On appeal, however, the District of Columbia has acknowledged that it is not clear whether those provisions are directly involved, and has placed primary reliance upon § 40–703.

3. In effect the $150.00 limit on fees would require the District to notify a lienor of the impoundment of his secured vehicle within 50 days in light of the daily storage charge of $3.00, if the District wished to be fully reimbursed for storage.

District of Columbia's interest in obtaining payment of the registered owner's unpaid parking tickets under D.C.Code § 40–603(k) (1973) (the predecessor of § 40–703(c) (1981)). Under § 40–603(k)(3), the "owner [of such vehicle] . . . or other duly authorized person" was permitted to secure release of the vehicle by depositing "the collateral required for his appearance in Superior Court of the District of Columbia to answer for each violation for which there is an outstanding or otherwise unsettled traffic violation notice or warrant." We held that the "owner . . . or other duly authorized person" contemplated by the statutory provision included the "registered owner, or his legal representative or a person authorized by the owner to operate the vehicle," but not a chattel mortgagee, "even one whose right to possession has accrued on default by the conditional vendee." *Id.* at 540. We were not asked to address the central issue presented on this appeal, namely, whether appellant's security interest in an impounded vehicle prevails over the District's interest in obtaining payment of towing and storage fees incurred as a result of the impoundment.

After the occurrence of the facts which gave rise to *Franklin I,* but before issuance of our opinion in that case, the District of Columbia Council amended § 40–603(k)(3) by the adoption of the District of Columbia Traffic Adjudication Act of 1978. 25 D.C. Reg. 1275 (1978). The section, as amended, has been recodified as D.C.Code § 40–703(k) (1981). The amended statute retains the previous reference to "owner . . . or other duly authorized person" as well as the requirement that collateral for court appearance be deposited in order to secure the release of a vehicle. In addition, the amended statute makes certain requirements concerning the payment of impoundment and storage fees before release can be secured. The statute now reads as follows:

(k)(3) The owner of such impounded or immobilized vehicle, or other duly authorized person, shall be permitted to repossess or to secure the release of the vehicle upon:

(A)(i) The depositing of the collateral required for his appearance in the Superior Court of the District of Columbia to answer for each violation; or

(ii) Depositing the amount of the potential fine and penalty for each infraction, for which there is no outstanding or otherwise unsettled traffic violation notice, notice of infraction or warrant; and

(B) Upon the payment of the fees required by paragraph (4) of this section.

(4) The owner of an immobilized vehicle shall be subject to a booting fee of $25 for such immobilization. The owner of an impounded motor vehicle shall be subject to a towing fee of $50, plus a fee for storage. The owner of an immobilized vehicle which was impounded shall be subject to a total fee of $50 plus a fee for storage. . . .

■ As noted previously, in *Franklin I,* we held that the words "owner . . . or other duly authorized person" for purposes of posting collateral for parking violations under § 40–703(k)(3)(A) did not include a chattel mortgagee. Nevertheless, the District now urges us to construe the same term, "owner . . . or duly authorized person," for purposes of paying towing and storage fees resulting from impoundment for parking violations under subsection (B) of the same section as including a chattel mortgagee. The District maintains that the rationale for the holding of *Franklin I* was that while the person obliged to pay parking tickets was implicated in culpable behavior, "the inference of culpable behavior does not attach . . . to a secured party whose right to repossess accrues after the parking violations." *Franklin I, supra,* 404 A.2d at 541. The District also contends that its towing and storage of an impounded vehicle inure to the benefit of the chattel mortgagee by providing a safe place for storing the vehicle and by thereby protecting it from theft or damage.

While the District's position arguably has some merit, it still remains true that in order to adopt it we would have to accord

to the word "owner" two different definitions in the same subsection of the controlling statute: (1) "registered owner" for purposes of posting collateral and paying penalties or fines, and (2) "registered owner or lienholder" for purposes of paying impoundment and storage fees. *See* D.C.Code § 40–703(k)(3), (4).

We decline to give the same term two different definitions within the same subsection of the statute. Instead, we adhere to the definition of "owner ... or other duly authorized person" that we adopted in *Franklin I,* which excludes the lienholder. As we noted in *Franklin I,* "the impoundment remedy is directed toward ensuring the appearance of the culpable party in court to answer for his parking violations." *Id.* at 540. Collection of fines and penalties for violations attributable to the registered owner remains the ultimate object of the statute, and the impoundment and storage fees were incurred in the District's pursuit of that legislative goal.

■ The District also argues that after an automobile has remained impounded by the Department of Transportation for a substantial period during which the owner or lienholder has failed to come forward to claim it, it is fair to treat the vehicle as "abandoned" and to subject it to the provisions for disposition of abandoned property by the Metropolitan Police Department Property Clerk set forth in D.C.Code § 4–153 *et seq.* (1981). Our difficulty with this position is that the statutory scheme at issue here requires that the Department of Transportation need send notice of the impoundment only to the owner of the impounded vehicle, not to the chattel mortgagee. D.C.Code § 40–703(k)(2). A chattel mortgagee is statutorily entitled to notice only when the vehicle has been transferred to the custody of the Property Clerk prior to public sale. *See* D.C.Code § 4–161(e). There is no specified time within which the Department of Transportation must transfer a vehicle which it seizes under § 40–703(k) to the Property Clerk in order to

trigger the requisite notice to a chattel mortgagee of the impoundment.

Here, the Department of Transportation gave Franklin no notice of the initial impoundment. Franklin was notified many weeks later, after the vehicle had been transferred to the custody of the Property Clerk, that it had already incurred $263.00 in towing, storage and notice fees. Because the total amount of such charges, specifically storage, will accumulate with every passing day during which the vehicle is in the District's custody, we question seriously whether due process would be afforded under the construction of the statutes proposed by the District in the absence of any provision for "reasonable" notice to a chattel mortgagee. *Cf. Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (upholding constitutionality of Louisiana sequestration procedure); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (holding unconstitutional Florida and Pennsylvania prejudgment replevin procedures); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (holding unconstitutional Wisconsin garnishment procedures).

■ The District finally argues that the statutory scheme of § 40–703(k)(4) makes it, in effect, a lienholder regarding the towing and storage fees, and gives it priority over Franklin, the prior lienholder. We noted in *Franklin I* that axiomatically "a prior lien gives a prior legal right ('first in time, first in right'), except where statute varies the common law rule." *Id.* at 540. *See also District of Columbia v. Hechinger Properties, Inc.,* 197 A.2d 157, 160 (D.C. 1964). Subsequently, in *Malakoff v. Washington,* 434 A.2d 432, 435 (D.C.1981), we held that prior lienholders are afforded protection even against the District's claims for taxes unless the "legislative intent to make claims or liens for taxes absolutely preferred ... clearly appear[s] from a strict construction of the statute."

The District argues here that the payment of towing and storage fees is not a

statutory lien per se but rather a condition precedent for release of the vehicle. Nevertheless, we must recognize the policy of protecting parties who have prior liens under the Uniform Commercial Code, *see* D.C.Code § 28:9–503 (1981), and of permitting others with claims upon the property to precede them only where the legislative intent to bring about that result is entirely clear. *District of Columbia v. Franklin Investment Co., supra,* 404 A.2d at 540.

We are cognizant of the legitimate interest of the District of Columbia in securing reimbursement for the expenses it incurs in impounding and storing automobiles. Our function, however, is to construe the statutory scheme that is before us. The order appealed from is

*Reversed and remanded to the trial court for further proceedings consistent with this opinion.*

PAIR, Associate Judge, Retired, dissenting:

In *Franklin I, supra,* 404 A.2d at 540, we considered the "objects and purposes" of a statutory scheme far less pellucid than the enactment now brought into question. Under D.C.Code § 40–603(k)(3) (1973), there appeared to be a single requirement for repossession of an automobile impounded by the District of Columbia for outstanding traffic violations: the "owner" or "other duly authorized person" was required to deposit collateral in Superior Court to answer for each infraction. We held, first, that this single provision did not create a lien for the unpaid tickets, and second, that because its apparent purpose was to insure the culpable party's appearance in court, an "innocent" chattel mortgagee was not an "owner" or "duly authorized person" for the purposes of the statute. *Franklin I, supra,* 404 A.2d at 540. Not considered in *Frank-*

*lin I* was another statutory provision, D.C. Code § 159(d)(2) (1973) [recodified as D.C. Code § 4–160(d)(1) & (2) and D.C.Code § 4–161(e) (1981)], creating an equally significant requirement for repossession of an automobile impounded by the District of Columbia for outstanding traffic violations—payment of towing and storage fees.[1]

As the majority correctly notes in the case now at bar, in 1978 the District of Columbia Council amended § 40–603(k)(3). The new enactment [recodified as D.C.Code § 40–703(k)(3) (1981)] brings together the disparate parts of the 1973 provisions and makes clear the dual requirements which are conditions precedent to repossession:

> The owner of such impounded or immobilized vehicle, or other duly authorized person, shall be permitted to repossess or to secure the release of the vehicle upon:
>
> (A)(i) The depositing of the collateral required for his appearance in the Superior Court of the District of Columbia to answer for each violation; or (ii) depositing the amount of the potential fine and penalty for each infraction ... *and*
>
> (B) Upon the payment of the fees required by paragraph (4) of this section [impoundment, towing and storage costs].

(emphasis supplied). Consequently, the present statutory scheme clearly creates a lien in favor of the District of Columbia on any automobile impounded for outstanding traffic violations. Paragraph (4) of Section (B) is concerned principally with the payment of storage and towing costs rather than parking tickets. These significant costs are plainly offset by the proceeds from public sale of any automobile impounded by the District in effective traffic administration. D.C.Code § 4–161(e) (1981).[2] See *Franklin I, supra,* 404 A.2d at 539 ("essential characteristic" of statutory

---

1. In *Franklin I, supra,* the chattel mortgagee did not contest these costs, but instead paid them to the police property clerk. Although the opinion does not cite the particular provision under which the fees were paid, examination of the 1973 Code indicates that § 4–159(d)(2) is of relevance.

2. This provision comes into effect if the owner fails to claim the vehicle. The automobile is then considered lost or abandoned and publicly auctioned. See *Franklin I, supra,* 404 A.2d at 538 n. 4.

lien is right to enforce lien by sale of involved property). Thus, a lien having been created, appellant's security interest under article 9 of the Uniform Commercial Code (UCC) is merely prior in time to the District's lien, *see* D.C.Code § 28:9–103 *et seq.* (1981), but not prior in right. Article 9 does not, of course, apply to state statutory liens that arise by operation of law. *See generally,* White & Summers, Uniform Commercial Code § 22–2 (2d ed. 1980).

Commercial law principles govern construction of the term "owner" "or other duly authorized person." Under the UCC, upon default by a conditional sales purchaser, the secured party, or chattel mortgagee, has absolute right to possession of the collateral. D.C.Code § 28:9–503 (1981); *see Franklin I, supra,* 404 A.2d at 540; *District of Columbia v. Hamilton National Bank,* 76 A.2d 60, 63 (D.C.1950). The chattel mortgagee thereby becomes, in effect, the absolute "owner" or "person authorized to possess" the collateral. Thus, when Edwards defaulted on his loan payments, Franklin Investment Company was vested with an absolute right to possession of the 1974 Ford Mustang II, subject only to the lien of the District of Columbia for towing, impoundment, and storage fees. From this it must follow that under the plain language of D.C.Code § 40–703(k)(3) (1981), Franklin, in order to exercise its right, was required as a condition precedent to pay to the District of Columbia its charges for towing, impoundment and storage. *See* D.C.Code § 4–161(e)(1) (1981).

Whatever may now be said of *Franklin I,* the inescapable fact is that the law governing the case at bar clearly creates an enforceable lien on behalf of the District of Columbia superior to that of Franklin Investment Company. While it is true that the chattel mortgagee is entitled to notice only when the vehicle is transferred from the Department of Transportation to the Property Clerk for public sale and no statute specifies the time of such transfer, by no process of legitimate reasoning can it be concluded that it was basically wrong to require chattel mortgagees to assume the

risks of possible impoundment, and payment of the charges thereby incurred, as a cost of doing business. Certainly they are in far better position to offset the costs of impoundment than the District of Columbia government, whose taxpayers have no prophylactic recourse.

I respectfully dissent.